**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **WINSTON WESLEY NOLES** | § | |
| | § | |
| ***Plaintiff,*** | § | |
| | § | |
| **v.** | § | **Civil Action No. 6:26-CV-00221** |
| | § | |
| **CHARLES W. GREGORY, ROBERT W. McCUMSKEY, CAMERON W. BECKHAM, DERRICK HOCUTT, and CITY OF TRINIDAD, TEXAS** | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| ***Defendants.*** | § | |

## DEFENDANTS' MOTION TO DISMISS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Charles W. Gregory, Robert W. McCumskey, Cameron W. Beckham, Derrick Hocutt, and City of Trinidad, Texas, Defendants in the above-numbered and -referenced action, and files this their Motion to Dismiss.

## I.
## INTRODUCTION

This is not a First Amendment case. Police officers – who had never heard of Plaintiff – were contacted by the municipal judge of the City of Trinidad judge to investigate a disturbance at City Hall; and investigate they did.

During that investigation, these officers found probable cause – or at least arguable probable cause – that a violation occurred. Because the officers had arguable probable cause, each of the officers is entitled to qualified immunity from Plaintiff's seizure claim. To that same end, Plaintiff failed to show that probable cause did not exist, so each officer is also entitled to qualified immunity from Plaintiff's retaliation claim.

Along with the retaliation claim, Plaintiff also claims that the brief period he spent in the patrol vehicle while the officers finished his citation paperwork was a second, separate seizure. But that wind-down was part of the single arrest, not a new seizure, and Plaintiff identifies no clearly established law making the completion of routine paperwork a separate constitutional event. Thus, each officer is entitled to qualified immunity from Plaintiff's prolonged-seizure claim. Because Plaintiff cannot show that his constitutional rights were violated, his claim against the City also fails. Therefore, Plaintiff's Complaint should be dismissed with prejudice.

## II. FACTS[1]

Picture a small Texas town. A man walks into city hall during the workday with a camera, and curses and insults the City Administrator. (Pl.'s 1st Am. Compl. [#5], ¶¶ 25, 28.) A city employee gets so upset she is taken to another room. (Pl.'s 1st Am. Compl. [#5], ¶ 27.) When the man steps outside, a city employee locks the doors so he cannot come back inside the municipal building. (Pl.'s 1st Am. Compl. [#5], ¶ 31.) A municipal judge – a judicial official whose job it is to stay calm and neutral – is worried enough that she texts a policeman and asks him to come to City Hall. (Pl.'s 1st Am. Compl. [#5], ¶ 32.)

The officers show up, but they do not immediately arrest the man. They go inside, they talk to the employee, they look at what happened, they take about twenty minutes to analyze the situation. (Pl.'s 1st Am. Compl. [#5], ¶¶ 38-48.) The Police Chief later decides that the disruptive person does not need to go to jail; they just write him a ticket and send him on his way. (Pl.'s 1st

[1]Because Defendants file this Motion pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded facts (but not conclusory statements). Defendants accept as true only the well-pleaded facts in Plaintiff's First Amended Complaint and only for the purposes of this Motion, and do not admit them for any other purpose. In light of the standard applicable to motions to dismiss, Defendants repeat some facts as Plaintiff has pleaded them. That repetition is not an admission but an acknowledgment of the Rule 12(b)(6) standard.

Am. Compl. [#5], ¶ 53.) Plaintiff sits in the patrol vehicle for about twenty minutes while the paperwork is finished. (Pl.'s 1st Am. Compl. [#5], ¶ 57.)

Now Plaintiff is suing everybody. He wants the Court to believe he was arrested because of protest signs he was holding outside of City Hall. (Pl.'s 1st Am. Compl. [#5], ¶¶ 87-94.) But his complaint describes a disturbance inside the building, the worker who had to be moved, the locked doors, and a judge contacting the police. (Pl.'s 1st Am. Compl. [#5], ¶¶ 24-32.) The police did not punish him for a sign; they answered a call for help and investigated a disturbance. (Pl.'s 1st Am. Compl. [#5], ¶¶ 38-48.) For the Court to make the inference that this ticket was about a sign, it would have to ignore Plaintiff's well-pleaded facts. *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009) (holding that when a complaint's allegations supply an obvious alternative explanation, an inference of unlawful intent is not a reasonable one the court must draw).

## III.
## STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead enough facts to state a claim to relief that is facially plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim is plausible on its face when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Iqbal*, 556 U.S. at 678. When ruling on a 12(b)(6) motion to dismiss, the court generally may rely on the plaintiff's complaint and any proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).

But unadorned accusations that "the-defendant-unlawfully-harmed-me" are not enough to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And the plaintiff must show that the alleged conduct was more than a sheer possibility. *Iqbal*, 556 U.S. at 678.

Where a complaint contains facts that are just simply consistent with a defendant's liability, the plaintiff has not met his burden. *Id.* While the Court accepts well pleaded facts in a complaint as true, mere legal conclusions do not get the same treatment. *Iqbal*, 556 U.S. at 678-79. The plaintiff must provide specific, well-pleaded facts and not conclusory allegations. *Id.*

## IV.
## ARGUMENT

***a. Count One: All individual defendants are entitled to qualified immunity because arguable probable cause existed for Plaintiff's arrest.***

Probable cause existed to arrest Plaintiff. Plaintiff's Fourth Amendment theory relies on a legal error: he assumes that the arrest lacked probable cause because an officer articulated the elements of an offense incorrectly. But an officer's state of mind is irrelevant to the existence of probable cause. *Whren v. U.S.*, 517 U.S. 806, 813-14 (1996) (foreclosing the argument that a Fourth Amendment challenge depends on the officer's motivation). Probable cause is determined objectively on the totality of the circumstances known to the officer at the time. *Dist. of Columbia v. Wesby*, 583 U.S. 48, 57 (2018). And probable cause is not a high bar. *Id.* It requires only a probability or a substantial chance that criminal activity occurred. *Id.* Nor must the officers have identified the "right" offense; probable cause on any offense the facts support defeats a Fourth Amendment claim. *Devenpeck v. Alford*, 543 U.S. 146, 153-55 (2004) (finding that an arresting officer's state of mind is irrelevant to the existence of probable cause).

The facts the officers confronted supply probable cause for disorderly conduct. A person commits that offense if, in a public place, he intentionally or knowingly makes unreasonable noise in a public place that tends to incite an immediate breach of the peace, or abuses or threatens a person in a public place in an obviously offensive manner. TEX. PENAL CODE § 42.01(a)(2), (4). First, Plaintiff was in a public place. (Pl.'s 1st Am. Compl. [#5], ¶ 25.) Second, Plaintiff's mental

state was such that he was cursing and berating staff; that is deliberate, not accidental, conduct. (Pl.'s 1st Am. Compl. [#5], ¶¶ 24-32.) Third, Plaintiff cursed and insulted the City Administrator loudly enough that another employee had to be removed to a different room and the office was closed and locked. (Pl.'s 1st Am. Compl. [#5], ¶¶ 27-28.) An arriving officer, told those facts by the staff and the summoning judge, had at least a fair probability to believe every element was met. That is all the Fourth Amendment requires. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 207 (5th Cir. 2009) (holding that an officer is entitled to qualified immunity if a reasonable officer could have believed probable cause existed on the information he possessed).

Probability that a crime happened is what the officers found during their investigation. Plaintiff entered a government workplace during business hours and cursed a government employee. (Pl.'s 1st Am. Compl. [#5], ¶¶ 28, 30.) A city employee was sufficiently disturbed by Plaintiff that she was moved to a separate room. (Pl.'s 1st Am. Compl. [#5], ¶ 27.) Once Plaintiff stepped outside, the building was locked to keep him out. (Pl.'s 1st Am. Compl. [#5], ¶ 31.) The municipal judge was sufficiently concerned that she summoned the police by text. (Pl.'s 1st Am. Compl. [#5], ¶ 32.)

These facts – a loud stranger cursing a government employee, an employee moving away from the person, the doors secured to keep the person out, and a judge's request for police – gave a reasonable officer at least a fair probability that Plaintiff had committed an offense. Probable cause does not require the officers to have proven, beyond a reasonable doubt, that the elements are met; it requires only a fair probability. *Wesby*, 583 U.S. at 57. That standard is measured against what the officer actually knew at the moment he acted, not against facts developed later or theories Plaintiff assembles in his Complaint. *Id*. (finding that probable cause is based on the totality of the circumstances).

What the officers knew was simple: a municipal judge – a neutral judicial officer – was troubled enough to summon them to City Hall. (Pl.'s 1st Am. Compl. [#5], ¶ 32.) When they arrived, the public office had been locked in the middle of a business day to keep Plaintiff out. (Pl.'s 1st Am. Compl. [#5], ¶ 42.) Those two facts alone gave a reasonable officer a fair probability that a disturbance rising to a breach of the peace had occurred inside. One does not summon police to a courthouse and lock the doors of a public building unless something serious took place.

Plaintiff's Complaint now offers a series of after-the-fact reinterpretations of that scene, that the water clerk actually found his remarks funny, that she was directed to leave by the City Administrator rather than driven out by his conduct, that his comments were somehow self-deprecating (though they were aimed at someone else, which makes little sense), and that any profanity was used only once. None of that is to the point. Even accepting each characterization as pleaded, none of it is alleged to be known by the officers. And even if they did know this information, a summons by a judicial officer of the court and the locking of the public building is enough for arguable probable cause that disorderly conduct took place.

Arguable probable cause requires only that a reasonable officer, on the facts available to him, could have believed an offense had occurred. *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000). And in assessing the available facts, officers may draw reasonable, common-sense inferences about human behavior, including inferences drawn from how the people on the scene responded to the suspect. *Wesby*, 583 U.S. at 58 (allowing officers to draw inferences based on the behavior of witnesses). And this Circuit grants qualified immunity even where the officer's probable cause judgment was imperfect, so long as it was reasonable. *Mendenhall*, 213 F.3d at 230-31 (granting immunity where a reasonable officer could have believed the arrest lawful, even if mistaken).

The most natural inference available to an arriving officer is that the visitor's conduct while inside was sufficiently abusive or disruptive to shut down a government office, that is, conduct that arguably suggests an immediate breach of the peace occurred. TEX. PENAL CODE § 42.01(a). The staff's protective response is circumstantial evidence of the character of the conduct that provoked it; indeed, the office's actual closure is direct evidence that Plaintiff's conduct did not merely tend to disrupt public business but succeeded.

Probable cause does not require officers to rule out a suspect's innocent explanations. *Wesby*, 583 U.S. at 61. Perhaps the staff overreacted; perhaps the closure was unnecessary. But an officer confronting a locked-down city hall already has arguable probable cause that a crime occurred. The fact that a worker had to be moved to another room because of Plaintiff's actions and a judge summoned the police only adds to the arguable probable cause.

And it does not matter that the disturbance had subsided by the time officers acted. A man who empties a crowded restaurant by screaming threats and pounding the counter cannot avoid arrest by sitting down quietly the moment he hears sirens. The calm the officers encounter says nothing about the storm that emptied the room minutes earlier. The officers were there investigating what happened in City Hall. (Pl.'s 1st Am. Compl. [#5], ¶¶ 38-48.) Plaintiff wants the Court to believe his arrest was because of a sign, but every paragraph that asserts this relies on labels and legal conclusions. He alleges that the officers' actions were substantially motivated by the content and viewpoint of Plaintiff's expression (Pl.'s 1st Am. Compl. [#5], ¶ 90); that the arrest constitutes viewpoint-based law enforcement in violation of the First Amendment (Pl.'s 1st Am. Compl. [#5], ¶ 91); and that arresting him for the content of constitutionally protected speech is per se without probable cause (Pl.'s 1st Am. Compl. [#5], ¶ 65). These are labels and conclusions

which are not taken as true. *Twombly*, 550 U.S. at 555 (holding that a court is not bound to accept as true a legal conclusion couched as a factual allegation).

To say the officers were substantially motivated by the content and viewpoint of Plaintiff's expression does not describe an event; it is to announce the verdict, using the exact words of the legal test for retaliation. *Iqbal*, 556 U.S. at 678 (holding that a formulaic recitation of the elements of a cause of action will not do). The same is true of "viewpoint-based law enforcement" and "per se without probable cause"; each states a legal conclusion about what the facts add up to, not a fact about what anyone did, said, or saw. (Pl.'s 1st Am. Compl. [#5], ¶¶ 65, 91.) A plaintiff cannot manufacture a defendant's unlawful intent by asserting it in the language of the standard he must satisfy. *Iqbal*, 556 U.S. at 680–81.

Plaintiff's allegations about the investigation that took place in City Hall are descriptions of events – facts which the Court takes as true. *Iqbal*, 556 U.S. at 679 (holding that when a complaint contains well-pleaded factual allegations, a court should assume their veracity). He alleges that officers entered City Hall, learned that the door had been locked, questioned employees inside, and did so in response to a summons from a judge. (Pl.'s 1st Am. Compl. [#5], ¶¶ 24-32, 38-48.) These allegations describe officers investigating a reported disturbance before acting. Put differently, Plaintiff's allegations amount to ordinary police work. Where a complaint's own well-pleaded facts supply an obvious lawful explanation, the inference of unlawful motive is not the reasonable one the court must draw. *Iqbal*, 556 U.S. at 682. Count One should be dismissed for Defendants Hocutt, Gregory, Beckham, and McCumsey because Plaintiff has not alleged that his constitutional rights were violated. For the avoidance of doubt, both prongs of qualified immunity are satisfied: Plaintiff pleads no constitutional violation for the reasons above, and even if he had,

no clearly established law put the unlawfulness of this arrest beyond debate, as shown in Section (c) below.

***<u>1. Chief Gregory is entitled to qualified immunity because he did not seize anyone.</u>***

It is hornbook law that a plaintiff in a civil rights lawsuit must demonstrate the defendant's personal involvement in any constitutional violation. *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights action."). A plaintiff must specify the personal involvement of each defendant in a § 1983 proceeding and "cannot make generalized allegations, nor can he support a claim based on any vicarious liability theory." *Murphy v. Kellar*, 950 F.2d 290, 292 n. 7 (5th Cir. 1992). In describing "personal involvement," "there must be an affirmative link between the incident and some act by the defendant." *Rizzo v. Goode*, 423 U.S. 362, 363 (1976); *see also Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983) (a defendant "must be either personally involved in the acts causing the deprivation of a person's constitutional rights, or there must be a causal connection between an act of the [defendant] and the constitutional violation sought to be redressed").

Here, Plaintiff concedes that Chief Gregory was not present for the arrest. (Pl.'s 1st Am. Compl. [#5], ¶¶ 8, 53, 77.) Count One should therefore be dismissed as to Chief Gregory due to his lack of personal involvement. Thus, Chief Gregory is entitled to qualified immunity.

***<u>2. Hocutt is entitled to qualified immunity because he did not seize anyone and reading the elements of a charge is not a constitutional violation.</u>***

Officer Hocutt cannot be liable on Count One; he seized no one. A seizure is the act by which an officer, through physical force or a show of authority, terminates a person's freedom of movement. *Brendlin v. Cal.*, 551 U.S. 249, 254 (2007). Officer Hocutt did not apply handcuffs or direct the arrest. (Pl.'s 1st Am. Compl. [#5], ¶¶ 47, 50.) His only alleged act was to walk an already-handcuffed man to a patrol car. (Pl.'s 1st Am. Compl. [#5], ¶ 50.) Officer Hocutt effected

no seizure and Count One fails against him on that basis. *Thompson*, 709 F.2d at 382 ("Personal involvement is an essential element of a civil rights action.").

Although it is unclear if Plaintiff attempts to state a claim for bystander liability against Officer Hucutt, any such claim would fail. Bystander liability requires the officer to (1) know a fellow officer is violating an individual's constitutional rights, (2) have a reasonable opportunity to prevent the harm, and (3) choose not to act. *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013).

Plaintiff fails to plead that Officer Hocutt had knowledge of a violation. An officer who lacks specific knowledge of the violation cannot be a participant in unlawful acts. *Whitley*, 726 F.3d at 646. Plaintiff alleges only that Officer Hocutt was within hearing distance when the other officers recited the elements of the offense. (Pl.'s 1st Am. Compl. [#5], ¶ 49.) But pleading proximity is not pleading that Officer Hocutt heard, much less recognized, a constitutional violation in progress. And even if he heard every word, an officer's recitation of the elements of an offense is not a constitutional violation a bystander is bound to recognize. *Whitley*, 726 F.3d at 647 (requiring acquiescence to unlawful conduct for bystander liability to apply).

Bystander liability also requires the opportunity to prevent harm. *Whitley*, 726 F.3d at 647. Officer Hocutt is employed by the City of Malakoff and has no authority over a Trinidad arrest; intervening would have meant ordering officers he does not supervise, in a jurisdiction not his own, to abandon a charge they had already decided to bring. (Pl.'s 1st Am. Compl. [#5], ¶ 47.) He had no power to do so. Even if Officer Hocutt corrected the recited elements, it would have changed nothing because probable cause is judged objectively, on the totality of the circumstances, not on an officer's recitation of elements. *Wesby*, 583 U.S. at 57. Plaintiff pleads neither knowledge nor opportunity; Officer Hocutt is not liable as a bystander. Further, Plaintiff fails to

plead clearly established law that shows an officer is required to intervene when the wrong elements of a charge are read. Thus, Officer Hocutt is entitled to qualified immunity and Claim One should be dismissed.

***b. Count Three: Plaintiff's retaliation claim fails because he cannot overcome the probable cause that supported his arrest, and the narrow Nieves exception does not apply.***

Count Three fails for the same reasons discussed immediately above. A plaintiff bringing a First Amendment retaliatory arrest claim must plead and prove the absence of probable cause; the existence of probable cause defeats the claim. *Nieves v. Bartlett*, 587 U.S. 391, 401 (2019). This applies where, as here, the officers had at least arguable probable cause. *Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002) (requiring only that a reasonable officer could have believed probable cause existed for a retaliation claim).

The one narrow exception to *Nieves* does not apply. That exception allows a retaliatory arrest claim to proceed despite probable cause where the plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals who had not engaged in the same protected speech were not. *Nieves,* 587 U.S. at 407. This exception is narrow and the evidence must be objective. *Gonzalez v. Trevino*, 602 U.S. 653, 655 (2024). Plaintiff offers no objective evidence; he alleges only that unspecified others have not been arrested for the same conduct, naming no one and pleading no facts. (Pl.'s 1st Am. Compl. [#5], ¶ 92.) That is a naked assertion devoid of further factual enhancement that receives no presumption of truth. *Iqbal*, 556 U.S. at 678.

And if Plaintiff bases his retaliation claim against Officer Beckham on the allegation that he played music in his patrol vehicle, then Plaintiff should explain to the Court how playing music is an adverse action that would deter a person of ordinary firmness from exercising his rights.

*Keenan*, 290 F.3d at 258 (requiring a First Amendment retaliation claim to include only actions that would chill or silence a person of ordinary firmness from future First Amendment activities). Contrary to being chilled, Plaintiff happily continued. (Pl.'s 1st Am. Compl. [#5], ¶ 45.) And Plaintiff's assertion that the music "constituted content- and viewpoint-based interference" is a legal conclusion the Court need not accept as true. (Pl.'s 1st Am. Compl. [#5], ¶¶ 91.); *Iqbal*, 556 U.S. at 678. Because probable cause existed and the *Nieves* exception does not apply, Count Three should be dismissed for Defendants Hocutt, Gregory, Beckham, and McCumsey and each is entitled to qualified immunity.

Both prongs of qualified immunity are satisfied here: the existence of probable cause defeats any First Amendment violation, and even assuming one, no clearly established law would have made the retaliatory nature of this arrest apparent to every reasonable officer, as set forth in section (c) below.

***1. Chief Gregory did not retaliate against Plaintiff because he had no personal involvement and no facts show his animus toward Plaintiff.***

As discussed more fully above, Chief Gregory was not present for the arrest, did not seize Plaintiff, and did not direct the handcuffing. (Pl.'s 1st Am. Compl. [#5], ¶ 8.) Therefore, Plaintiff's retaliation claim against him must fail because he did not have personal involvement. *Thompson*, 709 F.2d at 382

Plaintiff also pleads no facts tying Chief Gregory's citation decision to Plaintiff's protected speech. Plaintiff's allegations of motive are pleaded against the Defendants collectively and in the conclusory language of the legal standard. (Pl.'s 1st Am. Compl. [#5], ¶ 90.) The Court need not countenance them. *Iqbal*, 556 U.S. at 678 (disallowing conclusions to be accepted as facts);

*Keenan,* 290 F.3d at 258 (holding that retaliation requires the protected activity to be a substantial motivating factor for the adverse action).

Further, Plaintiff fails to plead any animus from Chief Gregory toward Plaintiff. A retaliation claim requires animus against this Plaintiff's protected activity, and a court does not credit conclusory allegations of a defendant's retaliatory state of mind. *Iqbal*, 556 U.S. at 662, 680, 683; *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) (holding that conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss). The statements Plaintiff uses as "animus" toward him were about a different person and a different arrest. (Pl.'s 1st Am. Compl. [#5], ¶¶ 22, 64, 90.) Plaintiff asks the Court to take animus allegedly directed to another person and transplant it into animus toward him. That is not the law. *Hartman v. Moore*, 547 U.S. at 259 (holding that a retaliation plaintiff must prove a causal connection between the official's retaliatory animus and the plaintiff's own injury)

The connection between the other person and Plaintiff makes no logical sense. That an official was frustrated by criticism surrounding one arrest says nothing about his state of mind toward a different person, engaged in different conduct, on a different day; the inference requires assuming that Chief Gregory harbored a retaliatory purpose against Plaintiff without any facts. An inference that rests on an assumption of the conclusion is not a reasonable one. *Twombly*, 550 U.S. 544, 557 (2007) (holding that allegations must raise a right to relief above the speculative level).

A showing of retaliatory intent must be personal to the plaintiff and the conduct at issue; a plaintiff cannot establish the motive element by borrowing animus expressed in someone else's case. *See Hartman*, 547 U.S. at 259. Because Plaintiff does not plead facts connecting any animus

to him or his expression, the requested inference is unreasonable. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (holding that a court is not to strain to find inferences favorable to the plaintiff nor to accept unwarranted deductions of fact).

And nothing in Plaintiff's complaint shows, or supports an inference, that Chief Gregory was upset about or cared about Plaintiff's use of a sign outside City Hall. He was off duty at his residence, was summoned to the scene, and was briefed by his officers. (Pl.'s 1st Am. Compl. [#5], ¶ 53.) After that briefing, Chief Gregory decided to release Plaintiff with a citation rather than take him before a magistrate. (Pl.'s 1st Am. Compl. [#5], ¶¶ 53, 55.) That is the extent of his involvement; Plaintiff asks the Court to impute animus where his own pleading supplies none.

Plaintiff also fails to provide clearly established law in which supposed animus toward one person is imputed to another who is engaged in different conduct. The retaliation claim against Chief Greogry should be dismissed because he is entitled to qualified immunity.

***2. Officer Hocutt is entitled to qualified immunity because he had no retaliatory motive.***

Officer Hocutt also had no retaliatory motive. A First Amendment retaliation claim requires that the defendant's adverse action was substantially motivated by the plaintiff's protected activity. *Keenan*, 290 F.3d at 258. No retaliatory facts are pleaded against Officer Hocutt. A Malakoff officer has no stake in Trinidad's water-system controversy or in who criticizes the Trinidad Police Department. Each defendant answers for his own state of mind. *Iqbal*, 556 U.S. at 676, 783. Further, Plaintiff provides no clearly established law in which an officer from one city is imputed with the supposed retaliatory motives of other officers from a different city. Count Three against Officer Hocutt should be dismissed because he is entitled to qualified immunity.

***c. Counts One and Three: No clearly established law barred an arrest supported by probable cause simply because a suspect was also holding a sign outside City Hall.***

Once qualified immunity is asserted, Plaintiff has the burden of identifying precedent that would have made it clear to every reasonable officer, in these specific circumstances, that the arrest was unconstitutional. *Wesby*, 583 U.S. at 63. A right is clearly established only when existing precedent has placed the question beyond debate. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Clearly established law is judged on a high degree of specificity. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). And the high degree of specificity is especially important in the Fourth Amendment context. *Id*. In the probable cause context, an officer is immune so long as a reasonable officer could have believed probable cause existed, even if he was mistaken. *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) (finding an officer is entitled to qualified immunity if a reasonable officer could have believed the arrest lawful).

Given what the officers knew at the time – a report of a disturbance inside a government building by a judicial officer of the court, an employee removed from Plaintiff's presence, the doors secured against Plaintiff to keep him out of the building, and the cursing of a public official – a reasonable officer could have believed there was a fair probability that a violation had occurred. (Pl.'s 1st Am. Compl. [#5], ¶¶ 27-28, 31-32, 42-45.) At the very least, reasonable officers could disagree on that question. *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (finding that qualified immunity protects all but the plainly incompetent or those who knowingly violate the law). Plaintiff cites no case holding that an officer must forgo an arrest otherwise supported by probable cause merely because the arrestee had also engaged in expression. Absent such precedent, the right Plaintiff asserts was not clearly established, and qualified immunity should be granted. As discussed more fully above, each individual defendant is therefore entitled to qualified immunity

for Counts One and Three because the facts pleaded allow an officer to believe probable cause existed for an arrest.

***d. Count Two: Plaintiff prolonged seizure claim should be dismissed because no clearly established law turns his custodial arrest into a seizure immediately after a decision to release.***

Plaintiff was lawfully arrested. (Pl.'s 1st Am. Compl. [#5], ¶ 2.) He was placed in a patrol car. (Pl.'s 1st Am. Compl. [#5], ¶¶8.) While he sat there, the officers wrote up his citation – the paperwork that let him leave with a ticket instead of going to jail. (Pl.'s 1st Am. Compl. [#5], ¶¶ 53, 55.) About twenty minutes later, that paperwork was done and Plaintiff was released. (Pl.'s 1st Am. Compl. [#5], ¶¶ 8, 57.)

Plaintiff's theory is that the arrest secretly became a brand-new, unlawful seizure the instant Chief Gregory decided to write a ticket instead of putting him in jail even though Plaintiff had not yet been released, the ticket was not yet written, and he was still in custody. In other words, Plaintiff says the officers had to let him go the second the Chief made up his mind, and that every minute of paperwork after that was a second, separate constitutional violation.

That is a novel theory. There are two different kinds of police encounters, and they follow different rules. A brief investigative detention, a "Terry stop," lets an officer hold someone only as long as needed to look into a suspicion, and no longer. *Terry v. Ohio*, 392 U.S. 1 (1968). A custodial arrest is different: once an officer has probable cause, he may take the person into custody and complete the routine steps that go with an arrest, including the paperwork. Plaintiff pleaded an arrest. (Pl.'s 1st Am. Compl. [#5], ¶¶ 2-3, 9-10, 22.)

A decision to release is not itself a release. A judge who decides to grant bail has not freed the defendant until the paperwork clears. So too here: Chief Gregory's decision to cite and release started the paperwork; it did not end the arrest. Plaintiff cites no authority for the idea that an

arrest legally ends the moment an officer decides on cite-and-release rather than when the arrestee is actually released. *al-Kidd*, 563 U.S. at 741 (holding that a right is clearly established only where existing precedent has placed the question beyond debate). Because the right he alleges is not clearly established, the officers are entitled to qualified immunity.

Even if the encounter were measured as a detention, twenty minutes to complete a citation is reasonable and legally insignificant. Officers may hold a person for the time reasonably required to complete a citation. *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). Plaintiff would have to show that holding him for roughly twenty minutes while he was being cited was unreasonable, *Florida v. Royer*, 460 U.S. 491, 500 (1983), and Fifth Circuit law forecloses that argument – far longer restraints are insignificant. *Shelton v. Rivera*, No. 92-2882, 1993 WL 529724, at *1 (5th Cir. 1993) (holding that five or six hours is an insignificant restraint on liberty).

Plaintiff cites no clearly established law fixing a constitutional stopwatch on cite-and-release processing, and none holds that a person stops being under arrest the moment an officer decides to cite-and-release rather than when the paperwork is finished and he is actually released. Because the law was not clearly established, indeed, the law points the other way, prong two of qualified immunity is satisfied. Defendants McCumsey, Beckham, and Gregory are entitled to qualified immunity for Count Two. *Wesby*, 583 U.S. at 63 (a right is clearly established only when existing precedent has placed the constitutional question beyond debate). Count Two should therefore be dismissed for Defendants McCumsey, Beckham, and Gregory.

Both prongs of qualified immunity are satisfied here: the brief paperwork wind-down was part of a single lawful arrest and was not a seizure, and even if it was, no clearly established law placed that question beyond debate.

***e. Count Four: Municipal liability fails because Plaintiff pleads no custom, no policymaker, and no moving force behind any constitutional violation.***

All six of Plaintiff's municipal-liability theories fail. Plaintiff must plead an official policy or custom, adopted by a policymaker, that was the moving force behind a constitutional violation. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

Plaintiff pleads six municipal liability theories. (Pl.'s 1st Am. Compl. [#5], ¶¶ 96-106.) All six fail because, without a constitutional violation by a city actor, there is no municipal liability. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). For the reasons set out in previous sections, no Trinidad officer violated Plaintiff's rights. Thus, each municipal-liability theory should be dismissed. Each theory also fails independently on one of *Monell*'s three elements. Each one, as pleaded, is missing a required element. Grouped by the element they lack: the custom, failure-to-train, and failure-to-supervise theories plead no custom; the City Administrator and ratification theories identify no policymaker behind the arrest; and the Chief Gregory and hiring theories plead no moving force that caused the arrest.

***1. There was no custom. Plaintiff's* Monell *claim fails because two dissimilar arrests are not a persistent, widespread pattern, and he cites no other instances of failure to train or supervise.***

Plaintiff fails to plead a custom or widespread practice of First Amendment violations because he pleads only two dissimilar incidents. (Pl.'s 1st Am. Compl. [#5], ¶ 102.) A custom is a persistent, widespread practice of city officials or employees that is "so common and well settled as to constitute a custom that fairly represents municipal policy." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc).

Prior incidents can be used as a pattern when they have occurred for so long or so frequently that the course of conduct warrants attribution to a governing body. *Peterson v. City of Fort Worth*, 588 F.3d 838, 850-51 (5th Cir. 2009). A pattern also requires sufficiently numerous prior

incidents, as opposed to isolated instances. *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir.1 989). And the prior incidents must be similar and specific. *Peterson,* 588 F.3d at 851. Prior incidents cannot simply be for any and all bad or unwise acts but rather must point to the specific violation in question. *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005).

Plaintiff pleads, at most, two arrests other than his own: the Water-Post Arrestee's state-jail-felony arrest under TEX. PENAL CODE § 42.06 and the criminal-trespass arrest of Ron Helms. (Pl.'s 1st Am. Compl. [#5], ¶ 02(a)-(b).) Two incidents, clustered within a span of weeks in the spring of 2026, do not constitute a persistent, widespread practice. *Davidson v. City of Stafford*, 848 F.3d 384, 396–97 (5th Cir. 2017) (rejecting the idea that three warrantless arrests over three and a half years established a custom); *Peterson*, 588 F.3d at 851-52 (rejecting the idea that twenty-seven citizen complaints of excessive force established a custom).

The two arrests over a few weeks describe, at most, isolated episodes and not entrenched municipal practice. *McConney,* 863 F.2d at 1184. The Water-Post Arrestee was arrested for a felony under Texas Penal Code § 42.06 for conduct essentially unrelated to Plaintiff's. (Pl.'s 1st Am. Compl. [#5], ¶¶ 21-23.) Mr. Helms was arrested for criminal trespass arising from his physical presence. (Pl.'s 1st Am. Compl. [#5], ¶¶ 61-62.) Plaintiff was arrested under Texas Penal Code § 42.01 for in-person disorderly conduct at City Hall. These are three different penal statutes, three different categories of conduct, three different arrestees, and three different factual scenarios.

A custom is a repeated way of doing a particular thing. *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (explaining that liability for an unwritten custom requires a practice so persistent and widespread that it effectively operates as municipal policy). Officers applying three different

statutes to three factually distinct situations is not a practice. *Peterson*, 588 F.3d at 851 (holding that prior incidents requires similarity and specificity).

Plaintiff may attempt to rebrand each arrest as "retaliation offenses." But the similarity requirement demands specificity so that a plaintiff cannot manufacture a pattern by naming the alleged violation abstractly. *Peterson*, 588 F.3d at 851 (holding that prior incidents cannot simply be all bad acts). In other words, the "retaliation" label assumes its own conclusion. Whether either prior arrest was retaliatory is a legal conclusion the Court does not accept as true. *Iqbal*, 556 U.S. at 678. The facts of those prior incidents need to be similar to the facts of this alleged incident. *Peterson*, 588 F.3d at 851-52 (analyzing the context in which twenty-seven claims of an excessive use of force was alleged). And the remaining subparts of ¶ 102 from Plaintiff's Complaint cannot count as a custom. *Pena v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (holding that a custom is built on incidents in cases other than the plaintiff's own).

Plaintiff's failure-to-train theory fails for the same missing pattern. A municipality is not liable simply because one of its officers is inadequately trained. *City of Canton v. Harris*, 489 U.S. 378, 387 (1989). Inadequate training supports liability "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact," and only where that failure reflects a "deliberate" or "conscious" choice by the municipality that can fairly be called a policy. *Id.* at 388-89. Plaintiff must connect the identified deficiency in a city's training program to the injury and the deficiency must have actually caused the constitutional violation. *Id.* at 391.

Plaintiff does not identify any specific training the City failed to provide, any obvious need for it, or any way in which a first-amendment-retaliation or unlawful-arrest violation was the "highly predictable" result of a gap in Trinidad's program. Plaintiff pleads no pattern of prior

similar violations and no facts about Trinidad's training program at all – only the conclusions that the officers the officers being untrained is "patently obvious." (Pl.'s 1st Am. Compl. [#5], ¶¶ 103.) But liability cannot rest on merely alleging that the existing training program represents a policy for which the city is responsible, nor on the observation that an injury could have been avoided had an officer received better training because such a claim could be made about almost any encounter resulting in injury. *Harris*, 489 U.S. at 389-91. Plaintiff is required to plead specific facts about the training deficiency rather than a formulaic recitation that officers were untrained. *Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997) (holding that a description of policy or custom and its relationship to underlying constitutional violation cannot be conclusory; it must contain specific facts). Because Plaintiff pleads neither a pattern nor any facts about the City's training, the failure-to-train theory should be dismissed.

Plaintiff's failure to supervise theory is based on the same deliberate indifference and causation requirements. *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (applying the same deliberate-indifference standard to failure to supervise claims as in failure to train claims). A supervisor is personally liable only where he failed to supervise, that failure was causally connected to the violation, and it amounted to deliberate indifference. *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001). Deliberate indifference requires more than a single instance of the lack of supervision producing a violation; the plaintiff must generally demonstrate at least a pattern of similar violations, and the inadequacy of supervision must be obvious and obviously likely to result in a constitutional violation. *Id.* A policymaker's deliberate indifference cannot be shown from a single violation. *Id.* at 462.

Plaintiff pleads only his own arrest, a single incident, no pattern of similar prior violations, no facts about Trinidad's supervision, and no obvious, likely to injure deficiency. Plaintiff's

failure to supervise theory adds nothing to the failure-to-train claim and fails for the same reason. Plaintiff's municipal liability claims should therefore be dismissed for failure to plead a custom or widespread practice.

***2. There was no policymaker. The City Administrator theory fails because personnel authority is not law-enforcement policymaking authority; and the ratification theory fails because Council inaction is not approval.***

For purposes of this Motion, Defendants do not dispute that Chief Gregory is the policymaker for police matters. None of the officials Plaintiff invokes for Count Four, the City Administrator and the City Council, is the policymaker for the arrest that injured him.

Plaintiff identifies no charter provision, ordinance, or resolution vesting policymaking authority in the City Administrator. Whether an official has final policymaking authority is a question of state and local law for the Court, not a fact a plaintiff may plead into existence. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). And, according to Plaintiff, § 32.053 of the City of Trinidad ordinances vests police power in the Chief of Police (Pl.'s 1st Am. Compl. [#5], ¶ 97.) Plaintiff cannot credibly allege "on information and belief" that the City Administrator has policymaking authority when he pleads the opposite. (Pl.'s 1st Am. Compl. [#5], ¶ 99.)

Further, policymaking authority is function-specific: an official may be a policymaker for one municipal function and not another. *Pembaur* v. City of Cincinnati, 475 U.S. 469, 482-83 (1986). Plaintiff's alleged constitutional injury is an arrest from the police. The City Administrator is alleged to hold authority over personnel. (Pl.'s 1st Am. Compl. [#5], ¶ 100.) Thus, Plaintiff cannot plead into existence that a City Administrator has policymaking authority over police matters. This sub-theory from Plaintiff should be dismissed.

Plaintiff's ratification theory also fails. Ratification is limited to "extreme factual situations." *Peterson*, 588 F.3d at 848. Unless a subordinate's actions are sufficiently extreme, a

policymaker's defense of a subordinate's actions is insufficient to establish a policy or custom. *Peterson*, 588 F.3d at 848; *Grandstaff v. City of Borger, Tex.*, 767 F.2d 161, 170 (5th Cir.1985). Plaintiff pleads only that the Council took no action, and only as to matters other than Plaintiff's arrest. (Pl.'s 1st Am. Compl. [#5], ¶ 101.) Because the only final policymaker for law enforcement is the Chief, and neither the City Administrator nor the City Council is a policymaker behind Plaintiff's arrest, the theories resting on those officials should be dismissed.

***3. There was no moving force. Plaintiff's remaining theories fail because a decision to release did not cause the arrest, and no hiring decision made a retaliatory arrest a plainly obvious consequence.***

A municipal policy must be the moving force behind the plaintiff's own constitutional injury - a direct causal link between the policy and the violation. *Piotrowski*, 237 F.3d at 578. Plaintiff's remaining theories fail on this element even if a policy and a policymaker were pleaded.

First, a policymaker's single decision creates municipal liability only where the policymaker's own act caused the constitutional violation. *Pembaur*, 475 U.S. at 478, 484. Plaintiff alleges that Chief Gregory cited and released him. (Pl.'s 1st Am. Compl. [#5], ¶ 55.) A decision to release cannot be the moving force behind a seizure Chief Gregory did not commit.

Second, Plaintiff's hiring theory fails under a demanding causation standard in *Monell* jurisprudence. Where a single hiring decision is alleged to have caused the plaintiff's injury, the plaintiff must meet rigorous standards of culpability and causation. *Bd. of the Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 405, 415 (1997). Plaintiff must show that his particular injury was a plainly obvious consequence of the decision to hire the officer. *Id.* at 411. In *Bryan County*, the Court held that hiring an officer with a criminal record, including pleading guilty to assault, did not make the use of excessive force a plainly obvious consequence of the hire because the plaintiff had not connected that specific background to that specific injury. *Id.* at 412-15.

Here, Plaintiff alleges that the officers had a "transient employment history" and that the city failed to investigate those prior departures – both on information and belief. (Pl.'s 1st Am. Compl. [#5], ¶ 105.) A transient employment history is not a predictor of First Amendment retaliation; nothing about switching jobs makes a viewpoint-based, retaliatory arrest the plainly obvious result of hiring a law enforcement officer. Plaintiff's hiring theory should be dismissed. Because there is no underlying violation, because the only policymaker act pleaded was a decision to release, and because each theory independently fails on the custom, policymaker, or moving-force element, Count Four should be dismissed in its entirety.

## V.
## CONCLUSION

At the end of the day, the officers had probable cause to arrest Plaintiff for what happened inside City Hall – and Plaintiff pleaded it that way. His allegations describe a disturbance that caused the doors to be locked to keep him out and drew a judge's call for policeman. Probable cause defeats Counts One and Three; the brief paperwork wind-down was not a separate seizure under Count Two; and Count Four states no basis for municipal liability. Defendants respectfully request that the Court dismiss each of Plaintiff's claims in their entirety.

Respectfully submitted,

**David Iglesias**
Lead Counsel
State Bar No. 24051733
david@iglesiaslawfirm.com

**Zachary T. Smith**
State Bar No. 24140683
zachary@iglesiaslawfirm.com

**IGLESIAS, PLLC**
501 Shelley Drive, Suite 125
Tyler, Texas 75701
Telephone: (903) 944-7185
Facsimile: (903) 630-5338

*Dallas Office:*
1412 Main Street, Suite 608
Dallas, Texas 75202

**COUNSEL FOR DEFENDANTS, CHARLES W. GREGORY, ROBERT W. MCCUMSKEY, CAMERON W. BECKHAM, DERRICK HOCUTT, AND CITY OF TRINIDAD, TEXAS**

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2026, a copy of the foregoing was served upon all counsel of record via the Court's electronic filing system.

David Iglesias