**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **WINSTON WESLEY NOLES**,<br>*Plaintiff*<br><br>**v.**<br><br>**CHARLES W. GREGORY,**<br>**ROBERT W. McCUMSEY,**<br>**CAMERON M. BECKHAM,**<br>**DERRICK HOCUTT,** and **CITY OF TRINIDAD, TEXAS**,<br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Case No.6:26-CV-00221-JCB-KNM** |

# PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (DKT. 13)

# TABLE OF CONTENTS

**TABLE OF CONTENTS** .......... 4
**TABLE OF AUTHORITIES** .......... 5
**I. INTRODUCTION** .......... 5
**II. RESPONSE TO STATEMENT OF THE ISSUES** .......... 7
**III. LEGAL STANDARD** .......... 14
**IV. ARGUMENT** .......... 15
**A. The Motion Answers a Complaint Plaintiff Did Not File.** .......... 17
**B. Count One States a Fourth Amendment Claim Against Defendants McCumsey and Beckham: No Reasonable Officer Could Have Found Probable Cause—or Arguable Probable Cause—on the Facts the Officers Actually Knew.** .......... 19
**C. Count One Is Adequately Pleaded Against Chief Gregory Based on His Personal Decision to Continue the Ongoing Seizure.** .......... 23
**D. Count One States a Claim Against Defendant Hocutt: He Physically Seized Plaintiff, Jointly Participated in the Arrest, and Independently Failed to Intervene.** .......... 26
**E. Count Two States a Claim: Continued Handcuffed Confinement After the Decision to Cite and Release Exceeded the Lawful Scope of Any Seizure.** .......... 26
**F. Count Three States a First Amendment Retaliation Claim.** .......... 19
**G. Count Four States Municipal-Liability Claims Against the City of Trinidad.** .......... 23
**H. In the Alternative, Leave to Amend Should Be Granted.** .......... 26
**V. CONCLUSION** .......... 26

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. City of Round Rock*, 854 F.3d 298 (5th Cir. 2017) .......... 9, 13
*Anderson v. Estrada*, 140 F.4th 634 (5th Cir. 2025) .......... 5
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 4, 7
*Backe v. LeBlanc*, 691 F.3d 645 (5th Cir. 2012) .......... 5
*Bailey v. Iles* , 87 F.4th 275 (5th Cir. 2023) .......... 11, 12, 13, 25
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 4, 26
*Brendlin v. California*, 551 U.S. 249 (2007) .......... 15
*Brown v. Bryan Cnty.*, 219 F.3d 450 (5th Cir. 2000) .......... 24
*Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942) .......... 10
*Childers v. Iglesias*, 848 F.3d 412 (5th Cir. 2017) .......... 8
*City of Canton v. Harris*, 489 U.S. 378 (1989) .......... 24
*City of Houston v. Hill*, 482 U.S. 451 (1987) .......... 2, 12
*City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988) .......... 23
*Coggin v. State*, 123 S.W.3d 82 (Tex. App.—Austin 2003, pet. ref'd) (en banc) .......... 10
*Cohen v. California*, 403 U.S. 15 (1971) .......... 2, 12
*Comichi v. Pethel*, No. 25-10954 (5th Cir. June 23, 2026) (per curiam) (unpublished) .......... 7, 9
*Davidson v. City of Stafford*, 848 F.3d 384 (5th Cir. 2017) .......... 13
*Devenpeck v. Alford*, 543 U.S. 146 (2004) .......... 8
*District of Columbia v. Wesby*, 583 U.S. 48 (2018) .......... 2, 11
*Emesowum v. Cruz*, 756 F.App'x 374 (5th Cir. Nov. 29, 2018) .......... 17
*Florida v. Royer*, 460 U.S. 491 (1983) .......... 17
*Freeman v. Gore*, 483 F.3d 404 (5th Cir. 2007) .......... 12, 19
*Gonzalez v. Trevino*, 602 U.S. 653 (2024) .......... 3, 19
*Gooding v. Wilson*, 405 U.S. 518 (1972) .......... 12
*Hale v. Townley*, 45 F.3d 914 (5th Cir. 1995) .......... 16
*Hardinge v. State*, 500 S.W.2d 870 (Tex. Crim. App. 1973) .......... 15, 18
*Lewis v. City of New Orleans*, 415 U.S. 130 (1974) .......... 2, 12
*Lozano v. Smith*, 718 F.2d 756 (5th Cir. 1983) .......... 14
*Malley v. Briggs*, 475 U.S. 335 (1986) .......... 12
*Mendenhall v. Riser*, 213 F.3d 226 (5th Cir. 2000) .......... 13
*Merriott v. City of Bossier City*, No. 25-30325 (5th Cir. June 25, 2026) .......... 22
*Nieves v. Bartlett*, 587 U.S. 391 (2019) .......... 19
*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) .......... 3, 23
*Peña v. City of Rio Grande City*, 879 F.3d 613 (5th Cir. 2018) .......... 24, 25
*Peterson v. City of Fort Worth*, 588 F.3d 838 (5th Cir. 2009) .......... 24
*Rodriguez v. United States*, 575 U.S. 348 (2015) .......... 17
*Ross v. State*, 802 S.W.2d 308 (Tex. App.—Dallas 1990, no pet.) .......... 2
*Sauceda v. City of San Benito*, 78 F.4th 174 (5th Cir. 2023) .......... 2
*Shelton v. Rivera*, 1993 WL 529724 .......... 18
*Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162 (5th Cir. 1997) .......... 2, 10, 24
*T.O. v. Fort Bend Indep. Sch. Dist.*, 2 F.4th 407 (5th Cir. 2021) .......... 7, 19

*Torres v. Madrid*, 592 U.S. 306 (2021) ........ 3, 15
*Turner v. Driver*, 848 F.3d 678 (5th Cir. 2017) ........ 21
*United States v. Brigham*, 382 F.3d 500 (5th Cir. 2004) ........ 17
*United States v. Valadez*, 267 F.3d 395 (5th Cir. 2001) ........ 17
*Vela v. White*, 703 F.2d 147 (5th Cir. 1983) ........ 2
*Voss v. Goode*, 954 F.3d 234 (5th Cir. 2020) ........ 8
*Wells v. Bonner*, 45 F.3d 90 (5th Cir. 1995) ........ 8
*White v. City of Corrigan*, No. 9:23-cv-00106 (E.D. Tex. Jan. 14, 2025) ........ 9, 11
*Whitley v. Hanna*, 726 F.3d 631 (5th Cir. 2013) ........ 16
*Woods v. State*, 213 S.W.2d 685 (Tex. Crim. App. 1948) ........ 10

**Statutes**

Texas Penal Code § 38.02 ........ 9, 21
Texas Penal Code § 42.01(a)(1) ........ 10, 12, 20

**Rules**

Local Rule CV-7(a)(1) ........ 3
Rule 12(b)(6) ........ 4, 18, 22
Rule 15(a)(2) ........ 15

Plaintiff Winston Wesley Noles files this Response in Opposition to Defendants' Motion to Dismiss (Dkt. 13) (the "Motion") and respectfully shows the Court as follows:

## I. INTRODUCTION

Defendants ask this Court to dismiss a complaint Plaintiff did not file. In the Motion's telling, a man "curses and insults" his way through City Hall, an employee becomes "so upset she is taken to another room," and the building is locked down against a disturbance so serious that a judge must summon the police. (Mot. at 2). The First Amended Complaint—the pleading actually before the Court—alleges the opposite at every point, with specificity. Plaintiff never yelled, screamed, threatened, or raised his voice. (¶ **30**). He used profanity exactly once, in a self-deprecating joke that the supposed victim overheard and *found humorous*. (¶ **28**). The water clerk was moved to another room *before* that conversation occurred—during Plaintiff's lawful photography, at the City Administrator's direction, "so that Plaintiff could not see her." (¶ **27**). The doors were locked only *after* Plaintiff voluntarily exited, and only after the clerk looked out the window and saw his *protest signs and camera*. (¶ **31**). And no one inside City Hall called 9-1-1 or reported a crime; the municipal judge sent a text message to Defendant Beckham asking him to respond. (¶ **32**).

The Motion's legal theory fares no better than its facts. Defendants invoke *Devenpeck v. Alford* and *Whren v. United States* to argue that Sergeant McCumsey's on-camera recitation of a flatly unconstitutional offense standard—public place, profane language, and a "citizen that is not a public servant" who was "offended"—is irrelevant "subjective" motive. But *Devenpeck* permits an officer to substitute a different *offense*; it does not permit a defendant to substitute different *facts*. Probable cause is measured by the totality of the circumstances actually known to the

officers, *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018), and the Complaint pleads what the officers actually knew—because their own investigation is captured on their own body-worn cameras. Before any arrest, Defendant Beckham personally interviewed the water clerk inside City Hall, on camera, and she did not report being offended, did not request charges, did not file any complaint, and said only that Plaintiff had taken photographs, that the City Administrator had locked the door, and that she wished to leave to avoid escalation. (¶ **43**). The officers' own pre-arrest investigation *negated* the asserted predicate for arrest. Minutes later, they arrested Plaintiff anyway—and only after he declined to identify himself and challenged their understanding of the law. (**¶¶ 45–47**).

On those pleaded facts, no offense under any provision of Texas Penal Code § 42.01—or any other statute Defendants have identified or could identify—was supported by even arguable probable cause. The Fifth Circuit and the Texas courts have limited § 42.01's speech provisions to *fighting* words for four decades. *Vela v. White*, 703 F.2d 147, 152 (5th Cir. 1983); *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 165–66 (5th Cir. 1997); *Ross v. State*, 802 S.W.2d 308, 314–15 (Tex. App.—Dallas 1990, no pet.); *see also Sauceda v. City of San Benito*, 78 F.4th 174, 183 n.2 (5th Cir. 2023) (noting that "Texas courts have held that these provisions apply only to 'fighting words or acts'").

A single self-deprecating joke that its only audience found funny is not fighting words under any conceivable reading, and arresting a protester for causing "offense" has been foreclosed by the Supreme Court for more than half a century. *Cohen v. California*, 403 U.S. 15 (1971); *Lewis v. City of New Orleans*, 415 U.S. 130 (1974); *City of Houston v. Hill*, 482 U.S. 451 (1987).

Because the arrest was unsupported by probable cause, Counts One and Three are well pleaded, and Defendants' *Nieves* defense fails at the threshold—with *Gonzalez v. Trevino*, 602

U.S. 653 (2024), supplying an independent alternative path. Defendant Hocutt's argument that he "seized no one" ignores *Torres v. Madrid*, 592 U.S. 306 (2021), and the Complaint's allegation that he took physical custody of the handcuffed Plaintiff and escorted him to the patrol vehicle. And on Count Four, Defendants concede the dispositive premise: "Defendants do not dispute that Chief Gregory is the policymaker for police matters." (Mot. at 22). Chief Gregory's on-scene, unreviewable, and deliberate decision to *continue* an unconstitutional seizure—made after being briefed, with the unconstitutional offense standard audible on the contemporaneous record—is precisely the single-decision municipal liability recognized in *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986). The Motion should be denied.

## II. RESPONSE TO STATEMENT OF THE ISSUES

Local Rule CV-7(a)(1) requires a case-dispositive motion to "contain a statement of the issues to be decided by the court" and requires the response to address that statement. Defendants' Motion contains no statement of the issues. Plaintiff accordingly states the issues presented as follows:

**1.** Whether the First Amended Complaint pleads that Defendants McCumsey and Beckham arrested Plaintiff without probable cause—or arguable probable cause—for any offense, where the pleaded facts establish that the officers' own pre-arrest investigation, including the arresting officer's recorded interview of the asserted victim, negated the asserted predicate for arrest, and where the only conduct at issue was constitutionally protected expression that did not constitute fighting words.

**2.** Whether Defendants Gregory and Hocutt are adequately alleged to have personally participated in the seizure—Gregory through his on-scene, informed decision to continue the

ongoing seizure, and Hocutt through gathering and relaying the arrest predicate, supporting the handcuffing, and physically escorting the handcuffed Plaintiff to the patrol vehicle.

**3.** Whether the continued handcuffed confinement of Plaintiff for at least twenty minutes after the decision to cite and release exceeded the lawful scope and duration of any seizure.

**4.** Whether the Complaint states a First Amendment retaliation claim where it pleads the absence of probable cause, and, in the alternative, objective evidence within the meaning of *Nieves* and *Gonzalez v. Trevino* that enforcement is triggered by someone being offended by the content of speech.

**5.** Whether the Complaint states municipal-liability claims against the City of Trinidad, where Defendants concede that Chief Gregory is the final policymaker for police matters, the Complaint pleads his deliberate on-scene decision to continue the unconstitutional seizure, and the Complaint pleads a complete absence of First Amendment training for all four Defendant officers.

## III. LEGAL STANDARD

To survive dismissal under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court accepts all well-pleaded facts as true and views them in the light most favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. A defendant may not obtain dismissal by recasting the plaintiff's allegations, disputing them, or supplying inferences that run against the pleader.

Where qualified immunity is raised at the pleading stage, the plaintiff must plead "specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the

harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). The Court conducts that analysis on *Plaintiff's* version of the facts—not on Defendants' revision of them. And where video recordings are referenced in the pleadings, the Court may consider them, viewed in the light most favorable to the plaintiff, adopting them over the allegations only if the video "blatantly contradict[s]" them. *Anderson v. Estrada*, 140 F.4th 634, 642 (5th Cir. 2025). Plaintiff welcomes that scrutiny: the Complaint's account is anchored throughout to contemporaneous recordings—Plaintiff's livestream, the officers' body-worn cameras, and the Helms Recording (¶¶ 34–35, 43, 45, 48, 55, 61)—which corroborate, rather than contradict, the pleading.

## IV. ARGUMENT

### A. The Motion Answers a Complaint Plaintiff Did Not File.

The Motion's factual predicate—and therefore its probable-cause analysis—rests on a series of demonstrable mischaracterizations of the operative pleading. Each is material.

**First**, the Motion asserts that "[a] city employee gets so upset she is taken to another room," citing Paragraph 27. (Mot. at 2). Paragraph 27 alleges nothing of the kind. It alleges that *during Plaintiff's photography*—before Plaintiff spoke a single word to anyone—"the City Administrator directed the water clerk to leave her office and go elsewhere in the building *so that Plaintiff could not see her*." (¶ 27). The clerk was not "upset"; she was sequestered by a superior, preemptively, in response to the presence of a known citizen journalist. The Motion inverts the pleaded timeline: the clerk's relocation *preceded* the only profanity alleged, and the Complaint pleads that when the clerk overheard that single remark from the adjacent area, she "found it humorous." (¶ **28**).

**Second**, the Motion asserts—as the opening premise of its Count Two argument—that "Plaintiff was lawfully arrested," citing Paragraph 2. (Mot. at 16). Paragraph 2 pleads the opposite:

that over the entire twenty-minute pre-arrest sequence "no breach of peace occurred," and that Plaintiff "was cited for the words on his signs and for words spoken inside City Hall thirty minutes earlier." (¶ **2**). Nowhere does the Complaint plead a lawful arrest; its central allegation is that the arrest was unlawful. (¶¶ **65, 76**).

**Third**, the Motion repeatedly invokes the locked doors as proof that "something serious took place" inside. (Mot. at 6). The Complaint pleads that the doors were locked *after* Plaintiff had voluntarily exited—no one asked him to leave (¶ **30**)—and that the lock was applied when the water clerk "looked out the window and pointed out that Plaintiff had *posters and a camera* set up outside." (¶ **31**). On the pleaded facts, the lockout was a reaction to Plaintiff's protected expression, not to any disturbance. Defendants' contrary inference—that locked doors imply a completed breach of the peace—is an inference drawn *against* the pleader, which Rule 12(b)(6) forbids.

**Fourth**, the Motion describes "a judge's call for police[]" as though a judicial officer reported a crime in progress. (**Mot. at 24**). The Complaint pleads that no one—not the clerk, not the Administrator, not anyone—called 9-1-1 or reported an offense; the municipal judge "sent a text message to Defendant Beckham, who was off-site at the time, asking him to respond." (¶ **32**). A text asking an officer to come by is not a crime report, and the Complaint pleads no communication attributing any offense to Plaintiff.

**Fifth**, and most importantly, the Motion asserts that Plaintiff's account of what happened inside City Hall is "not alleged to be known by the officers." (**Mot. at 6**). Paragraph 43 alleges precisely the contrary: before the arrest, Defendant Beckham "pulled the water clerk into an interior office and questioned her with his body-worn camera activated," and the clerk "did not report being offended," "did not request that charges be filed," "did not file a complaint," and told

Beckham only that Plaintiff had taken photographs, that the Administrator had locked the door, and that she wished to leave to avoid escalation. (**¶ 43**). The arresting officer's own pre-arrest interview of the person later identified as the victim—conducted on his own recording equipment—is squarely pleaded as part of what the officers knew. Defendants' entire *Wesby* analysis proceeds as though Paragraph 43 does not exist.

The Motion's rhetorical centerpiece—the man who "empties a crowded restaurant by screaming threats and pounding the counter" (**Mot. at 7**)—illustrates the problem. The Complaint pleads no screaming, no threats, no pounding, and no emptied room. It pleads a quiet building, a single joke, an audience of one who laughed, and officers who investigated for twenty minutes, learned from the supposed victim herself that nothing had happened, and arrested Plaintiff anyway. Where, as here, the defendant's "obvious alternative explanation" exists only in a rewritten complaint, *Iqbal* does not assist it. 556 U.S. at 682. Even where qualified immunity is asserted at the pleading stage, the Court accepts "all well-pleaded facts as true" and draws "all inferences in favor of the plaintiff." *T.O. v. Fort Bend Indep. Sch. Dist.*, 2 F.4th 407, 413 (5th Cir. 2021). The Fifth Circuit recently reversed a qualified-immunity dismissal for precisely the error Defendants invite here, because the district court's probable-cause reasoning "disregard[ed] the numerous facts that support [the plaintiff's] position and dr[ew] inferences in favor of the defendants, which the court may not do at the motion-to-dismiss stage." *Comichi v. Pethel*, No. 25-10954, 2026 U.S. App. LEXIS 18219, at *15 n.4 (5th Cir. June 23, 2026) (per curiam) (unpublished) (citing *T.O.*, 2 F.4th at 413).

### B. Count One States a Fourth Amendment Claim Against Defendants McCumsey and Beckham: No Reasonable Officer Could Have Found Probable Cause—or Arguable Probable Cause—on the Facts the Officers Actually Knew.

### 1. *Devenpeck* permits a different offense, not different facts.

Defendants correctly recite that probable cause is objective and that the arresting officer's subjective rationale does not control. *Devenpeck v. Alford*, 543 U.S. 146, 152–53 (2004). But *Devenpeck*'s premise is that the *facts known to the officer* would support some offense—any offense. It is not a license to disregard what the officers knew, and it is certainly not a license to disregard what the complaint pleads they knew. "Probable cause exists" only where "the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Childers v. Iglesias*, 848 F.3d 412, 414 (5th Cir. 2017).

Sergeant McCumsey's contemporaneous recitation of the asserted elements—(i) public place, (ii) profane language, and (iii) offense to "a citizen that is not a public servant" (**¶ 45(a)**)—is not offered as evidence of "subjective" motive. It is the best evidence of *the universe of facts the officers possessed*: they arrested Plaintiff because someone was assertedly "offended," and they could identify no such person when asked. (**¶ 45(c)**). The recitation matters under *Devenpeck* itself, because it defines the factual predicate the officers acted on—a predicate their own investigation had already disproven. And the any-offense rule is not a shortcut past the analysis; it requires the Court to measure each candidate offense against the facts the officers actually possessed.

That rule is not a shortcut past the analysis; it requires the Court to measure each candidate offense against the facts the officers actually possessed. *See Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995) (arrest valid "if there was probable cause for *any of the charges made*" (emphasis added)) ; *Voss v. Goode*, 954 F.3d 234, 238 (5th Cir. 2020) (recognizing an officer "may justify the arrest by showing probable cause for any crime"). The Fifth Circuit applied exactly that

discipline at the Rule 12(b)(6) stage in *Comichi*: the court examined each available charge in turn, found the pleaded facts and incorporated video supported none, and denied qualified immunity on the pleadings. *Comichi*, 2026 U.S. App. LEXIS 18219, at *11-16.

And the universe of candidate offenses is fixed by Defendants' briefing. It is a defendant's "obligation to isolate and properly brief alternative grounds for an arrest," not the Court's "to discover them through armchair philosophy." *White v. City of Corrigan*, No. 9:23-cv-00106, slip op. at 16 (E.D. Tex. Jan. 14, 2025) (applying *Alexander v. City of Round Rock*, 854 F.3d 298, 306 n.3 (5th Cir. 2017) (refusing to place courts "in the position of having to prove a negative—analyzing *every* criminal statute to be sure that no other plausible grounds for probable cause exist")). Defendants have briefed only § 42.01. Any alternative offense raised for the first time in reply would come too late.

### 2. The facts actually known to the officers negated probable cause on any offense.

Taking the well-pleaded facts as true, at the moment of arrest the officers knew the following, and only the following. A municipal judge had texted Beckham asking him to respond; no offense was reported. (¶ **32**). Defendant Hocutt spent approximately six minutes inside City Hall gathering information. (¶ **39**). Defendant Beckham then personally interviewed the water clerk on body-worn camera; she reported *lawful* conduct (photography), reported the *Administrator's* act (locking the door), disclaimed any offense, requested no charges, and filed no complaint. (¶ **43**). Outside, the officers observed a lone man holding political signs, livestreaming, engaged in no violence, no threats, and no disturbance—for the entire twenty minutes they stood with him, conversed with him, and investigated. (¶¶ **44–48**). The arrest came only after Plaintiff declined to identify himself, citing Texas Penal Code § 38.02, and challenged the officers' recitation of the law. (¶ **47**).

Nothing in that universe of facts supplies a fair probability of *any* offense. Defendants' candidates—§ 42.01(a)(1) as cited, or the (a)(2) and (a)(4) variants the Motion introduces at page 4—all fail for the same reason: "Texas courts have held that these provisions apply only to 'fighting words or acts.'" *Sauceda*, 78 F.4th at 183 n.2 (citing *Ross*, 802 S.W.2d at 314–15); *see Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942). The Fifth Circuit has enforced that limitation for decades. *Spiller*, 130 F.3d at 165-66 (holding that a motorist's demand that an off-duty officer "move his damn truck," made after repeated polite requests, "cannot reasonably be interpreted as an invitation to fisticuffs"); *Vela*, 703 F.2d at 152 (examining that § 42.01 "is designed to punish so-called 'fighting words'"—only "words which would likely have a direct tendency to incite an ordinary person to violence" may be charged); *accord Coggin v. State*, 123 S.W.3d 82, 90-93 (Tex. App.—Austin 2003, no pet) (en banc).

Measured against that standard, the pleaded facts are not close. A single self-deprecating joke about a surname, delivered conversationally, in a calm building, to a listener who was not offended and an eavesdropper who laughed (¶ **28**), is the antithesis of language that "by its very utterance tends to incite an immediate breach of the peace." TEX. PENAL CODE § 42.01(a)(1). Actual or threatened violence is an essential element of a breach of the peace. *Woods v. State*, 213 S.W.2d 685, 687 (Tex. Crim. App. 1948). The Complaint pleads no violence, actual or threatened, by anyone, at any point. The protest signs outside—*Back the Blue*, *Fuck Bad Cops*, and *Shit Is Fucked Up And Stuff*—are core political speech materially indistinguishable from the jacket in *Cohen*, and the officers watched them provoke no one for twenty minutes. (**¶¶ 35–36, 48**). And the deliberative pace of the officers' own investigation—enter, interview, exit, confer, converse—is "categorically incompatible" with the statutory requirement of an *immediate* breach of the peace. (¶ **48**).

Context controls this analysis. In *Bailey v. Iles*, the Fifth Circuit held that an obvious joke—there, a Facebook post styled as a zombie-apocalypse gag—was protected speech because in context it "lacked believability and was not serious," and reversed a grant of qualified immunity to the officer who arrested the speaker anyway. 87 F.4th 275, 285 (5th Cir. 2023). A joke that its only audience laughed at is not transformed into an offense by an officer's failure to get it.

A court in this District recently applied these principles to materially indistinguishable facts. In *White v. City of Corrigan*, No. 9:23-cv-00106, slip op. at 21 (E.D. Tex. Jan. 14, 2025), officers arrested a protester for disorderly conduct under § 42.01(a)(1)–(2) as he stood at a public intersection holding a profanity-laden sign denouncing municipal corruption, after informing him that a caller had expressed offense at the sign. The court held that *Cohen* controlled; that a citizen's report of offense "do[es] not strip [the] speech of protection," because government may not suppress expression "solely to protect others from hearing it"; that no reasonably prudent officer could have concluded a crime had been committed; and that it was "beyond debate" that an officer cannot arrest a civilian without probable cause for holding "a textbook '*Cohen*' sign." The court accordingly denied qualified immunity at the Rule 12(b)(6) stage. Every element of that holding maps onto this case, except that the facts here are stronger: the asserted victim personally disclaimed offense to the arresting officer before the arrest. (**¶ 43**).

Defendants respond that officers need not credit a suspect's "innocent explanations" (**Mot. at 7** (citing *Wesby*, 583 U.S. at 61)). But the exculpatory information here did not come from the suspect. It came from the *asserted victim* in the arresting officer's own recorded interview before the arrest. (**¶ 43**). An officer may draw "common-sense" inferences from witness behavior, *Wesby*, 583 U.S. at 58—and the witness's behavior here was to laugh at the joke, disclaim offense, and decline to complain. Taking this together with the officers' presence for several minutes with Mr.

Noles while maintaining conversations with him cuts against any probable cause. *Wesby* does not permit an officer to discard the results of his own investigation in favor of an inference the investigation refuted. See also *Bailey*, 87 F.4th at 286 ) (recognizing that police "may not disregard facts tending to dissipate probable cause").

### 3. Arguable probable cause is absent, and the right was clearly established.

Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). An officer who arrests a protester on the express predicate that his words "offended" a citizen—after the citizen has personally told the officer she was not offended—is in the heartland of that exception, not its periphery. By May 2026, it had been clearly established for decades, at every level of authority binding in this Circuit, that (i) speech may not be criminalized as disorderly conduct unless it constitutes fighting words, *Gooding v. Wilson*, 405 U.S. 518, 524-28 (1972); *Vela*, 703 F.2d at 152; *Spiller*, 130 F.3d at 165; (ii) subjective offense at protected speech is not a lawful basis for arrest, *Cohen*, 403 U.S. at 20–21; *Lewis*, 415 U.S. at 133–34; *Hill*, 482 U.S. at 461–63; (iii) § 42.01's speech provisions in particular reach only fighting words, *Sauceda*, 78 F.4th at 183 n.2; *Ross*, 802 S.W.2d at 314–15; and (iv) "it is beyond question that [it is] a clearly established constitutional right to be free from arrest absent an arrest warrant or probable cause," *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007). Defendants demand a case holding that "an officer must forgo an arrest otherwise supported by probable cause merely because the arrestee had also engaged in expression." (**Mot. at 15**). That reframes the claim. Plaintiff does not contend the officers were required to forgo a supported arrest; he contends—and has pleaded—that no arrest or seizure was supported at all, because the only conduct at issue *was* the expression, and the expression was protected.

The Fifth Circuit rejected precisely this maneuver in *Bailey*. The officer there argued he was immune because no Fifth Circuit precedent addressed warrantless arrests under the specific statute invoked; the court held the plaintiff "does not have to identify such a case," because it is "beyond debate that '[a] warrantless arrest without probable cause violates clearly established law defining an individual's rights under the Fourth Amendment,'" and because the objective reasonableness of an officer's probable-cause belief is assessed against the statute's text and the state case law interpreting it. 87 F.4th at 287 ) (first quoting *Davidson v. City of Stafford*, 848 F.3d 384, 391 (5th Cir. 2017) and then quoting *Alexander v. City of Round Rock*, 854 F.3d 298, 306–07 (5th Cir. 2017). Here, the statute's text requires an *immediate breach of the peace* and the state case law confines § 42.01's speech provisions to fighting words; the officers' own recorded recitation flunked both. And *Davidson*—the source of *Bailey*'s beyond-debate holding—is the same authority Defendants invoke for their *Monell* arguments. (**Mot. at 19**). The body of law set out above placed the unlawfulness of this arrest beyond debate long before May 12, 2026.

*Mendenhall v. Riser* does not alter the analysis; it states the very limit that controls here. *Mendenhall* recognizes immunity where "officers of reasonable competence could disagree" about probable cause—but "a qualified immunity defense cannot succeed where it is *obvious* that a reasonably competent officer would find no probable cause." 213 F.3d 226, 230–31 (5th Cir. 2000) (emphasis added). In *Mendenhall*—a summary-judgment decision on a developed record—a homicide had indisputably occurred, and the officers' investigation developed facts on which reasonable officers could disagree about whether the plaintiff was the shooter: his presence at the scene with his weapon, witness statements, and his refusal to cooperate. *Id*. at 231–36.

Here, the officers' investigation ran the opposite direction: it eliminated the asserted basis for the charge, when the only asserted victim told the arresting officer, on his own recording, that

she was not offended, wanted no charges, and had filed no complaint. (**¶ 43**). Reasonable officers cannot disagree about whether a joke its only audience found funny constitutes fighting words. The question was not debatable, and Defendants identify no fact known to the officers that could have made it so.

### C. Count One Is Adequately Pleaded Against Chief Gregory Based on His Personal Decision to Continue the Ongoing Seizure.

Defendants argue that Chief Gregory "did not seize anyone" because he was not present at the initial handcuffing. (**Mot. at 9**). But personal involvement under § 1983 is satisfied where the defendant is "either personally involved in the acts causing the deprivation of a person's constitutional rights, *or* there [is] a causal connection between an act of the [defendant] and the constitutional violation sought to be redressed." *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983) (emphasis added)—the very authority Defendants cite. (**Mot. at 9**).

The seizure of Plaintiff was not a completed historical event when Chief Gregory arrived; it was ongoing. Plaintiff sat handcuffed in the rear of a patrol vehicle. (**¶¶ 51–52**). Chief Gregory was summoned, briefed, and presented with three options: release with no charge, release and void the citation, or continue the seizure through cite-and-release. (**¶¶ 53, 55**). The unconstitutional offense standard his sergeant had articulated was captured on the contemporaneous record and apparent to him. (**¶ 55**). With full authority to terminate the unlawful seizure—authority no other person on scene possessed—he elected to continue it, and then publicly defended it on a predicate the Complaint pleads he knew to be false. (**¶ 55**). An official who, with actual authority over an ongoing constitutional violation and knowledge of its defective basis, affirmatively directs its continuation is personally involved in that violation from the moment of his decision forward. At minimum, his decision is causally connected to every additional minute of Plaintiff's custody. That is all Counts One and Two require as to Gregory—and it is what Paragraph 77 pleads.

Should the Court conclude that these allegations are insufficient to state Gregory's personal involvement in the initial arrest, the deficiency is one of legal theory, not of available fact, and Plaintiff respectfully requests leave to amend under Rule 15(a)(2) rather than dismissal with prejudice.

### D. Count One States a Claim Against Defendant Hocutt: He Physically Seized Plaintiff, Jointly Participated in the Arrest, and Independently Failed to Intervene.

Defendants argue that Hocutt "seized no one" because his "only alleged act was to walk an already-handcuffed man to a patrol car." (**Mot. at 9**). The Motion both understates the pleading and misstates the law.

As to the law: "[T]he application of physical force to the body of a person with intent to restrain is a seizure." *Torres v. Madrid*, 592 U.S. 306, 325 (2021). An arrest "requires *either* physical force . . . *or*, where that is absent, submission to the assertion of authority." *California v. Hodari D.*, 499 U.S. 621, 626 (1991) (emphasis in original). And the force component asks almost nothing: an arrest "is effected by the slightest application of physical force," *id.* at 625, because "the mere grasping or application of physical force with lawful authority, whether or not it succeeded in subduing the arrestee," has constituted an arrest since the common law, *id.* at 624; *accord Brendlin v. California*, 551 U.S. 249, 254 (2007) (recognizing that seizure occurs through "physical force or show of authority" terminating freedom of movement)—Defendants' own authority. (**Mot. at 9**). Texas law has defined arrest the same way for half a century: a person is arrested "when he has been actually placed under restraint or taken into custody," TEX. CODE CRIM. PROC. art. 15.22, and "[a]n arrest is complete whenever a person's liberty of movement is restricted or restrained," *Hardinge v. State*, 500 S.W.2d 870, 873 (Tex. Crim. App. 1973) . An officer who takes physical custody of a handcuffed man and walks him from a public sidewalk to a patrol

vehicle for confinement is applying physical force to restrain his liberty of movement. That is not adjacent to a seizure; it *is* one under both the federal standard and Texas's own arrest statute.

As to the pleading: Hocutt's alleged role was not limited to the escort. He was the first officer on scene; he personally entered City Hall, spent approximately six minutes gathering the information that became the asserted predicate for the arrest, and relayed it to the Trinidad officers. (**¶¶ 38–39, 49–50**). He stood immediately behind Plaintiff, within arm's reach, in a seizure-support position at the moment of handcuffing. (**¶¶ 47, 50**). He then took physical custody of the handcuffed Plaintiff and escorted him to the patrol vehicle. (**¶ 50**). An officer who supplies the arrest's factual predicate, positions himself to effect it, and physically executes its custodial phase is a participant in the seizure, not a spectator.

Independently, the Complaint pleads bystander liability. *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013). Hocutt is not alleged to have been merely "within hearing distance" of ambient conversation; he is alleged to have been within arm's reach of Plaintiff, present throughout, when McCumsey recited an offense standard whose unconstitutionality has been settled since *Cohen*, when McCumsey refused Plaintiff's request for a warning, and when Beckham gave the order to "hook him up." (**¶ 49**). The violation he was bound to recognize was not, as the Motion has it, the misreading of statutory elements—it was a warrantless arrest of a peaceful protester on an expressly speech-based predicate. As for opportunity, the arrest followed a twenty-minute deliberative sequence with no exigency; a word from the officer who had himself conducted the inside-City-Hall investigation would have cost nothing. And the duty to intervene is not confined to officers of the same agency. *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995) (being "from different law enforcement agencies does not" relieve officers "from liability for a failure to

intervene"). Hocutt's status as a Malakoff officer responding into Trinidad describes, if anything, joint activity—it does not immunize him.

### E. Count Two States a Claim: Continued Handcuffed Confinement After the Decision to Cite and Release Exceeded the Lawful Scope of Any Seizure.

Count Two does not depend on the "novel theory" the Motion attributes to it. The governing principle is neither novel nor debatable: the tolerable scope and duration of a seizure are measured by the seizure's justification, and a seizure that continues after its mission is—or reasonably should have been—completed is unreasonable. *Rodriguez v. United States*, 575 U.S. 348, 354 (2015); *Florida v. Royer*, 460 U.S. 491, 500 (1983) (a seizure "must be temporary and last no longer than is necessary to effectuate the purpose" justifying it). Those principles apply to the manner in which any detention is carried out, whatever its label. *See, e.g., United States v. Valadez*, 267 F.3d 395, 398 (5th Cir. 2001) ("[O]nce an officer's suspicions have been verified or dispelled, the detention must end unless there is additional articulable, reasonable suspicion.").

Here, the Complaint pleads that once Chief Gregory decided Plaintiff would be released on a citation, the seizure's only remaining function was the mechanical completion of a Class C citation—yet Plaintiff remained handcuffed, confined in the rear of a patrol vehicle in warm conditions, for at least twenty additional minutes. (**¶¶ 52, 57–58**). Far from novel, these principles have already been applied to these facts. In *Emesowum v. Cruz*, when it held that "[a]t the time of [the suspect's] detention, no reasonable officer could have concluded that the Fourth Amendment permitted detaining a person in handcuffs in the back of a police cruiser after the officer's previously reasonable suspicion had been dispelled." 756 F.App'x 374, 379 (5th Cir. Nov. 29, 2018) (relying on *United States v. Brigham*, 382 F.3d 500, 510 (5th Cir. 2004) (en banc) and *United States v. Valadez*, 267 F.3d 395, 398 (5th Cir. 2001)).

The Fourth Amendment measures the *restraint*, not the paperwork's status: a seizure exists "whenever a person's liberty of movement is restricted or restrained," *Hardinge v. State*, 500 S.W.2d 870, 873 (Tex. Crim. App. 1973); *Hodari D.*, 499 U.S. at 626, so each additional minute of cuffed confinement (which was unlawful at its inception) was constitutionally cognizable and required justification proportionate to its purpose.

Whether handcuffed vehicular confinement was reasonably related in scope to writing a ticket is a fact question ill-suited to Rule 12(b)(6); at this stage the Court cannot find, on the pleadings, that it was a reasonable means of completing paperwork for a fine-only offense the Chief had already decided did not warrant magistration.

Defendants' contrary authority does not address the scope or duration of a seizure at all. (**Mot. at 17** (citing *Shelton v. Rivera*, No. 92-2882, 1993 WL 529724 (5th Cir. Nov. 30, 1993) (per curiam))). The passage Defendants invoke resolved a different question under a different doctrine: whether a five-to-six-hour post-arrest detention required a prompt judicial probable-cause determination under *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991)—and it did so in the course of affirming the dismissal of a police *chief* whose only alleged involvement was failing to schedule that hearing. Count Two does not allege that Plaintiff was denied prompt magistration; it alleges that the manner and duration of his continued restraint exceeded the seizure's remaining justification—a question *Shelton* never confronted and that *Royer* and *Rodriguez* now govern. *Shelton* is curious authority for dismissal in any event: on the claim that mattered, the Fifth Circuit *reversed* the dismissal of the plaintiff's false-arrest claim and remanded it for further proceedings.

Count Two also stands in the alternative to Count One, and the two reinforce each other in both directions. If, as pleaded, the arrest was unsupported by probable cause, then every minute of Plaintiff's custody—including the final twenty—was an unreasonable seizure, and no separate

scope analysis is required: a seizure unlawful at its inception does not improve with age. The clearly established inquiry resolves the same way. Defendants' qualified-immunity argument reduces to a demand for a case with a stopwatch, but that demand assumes the only violation in the final twenty minutes was one of duration. On the pleaded facts, the violation in those minutes was custody without probable cause (or any lawful basis)—a violation that has been "beyond question" unlawful for decades, *Freeman*, 483 F.3d at 411, for every minute it persists. Only if the Court were to conclude that the initial arrest was supported—and it should not—would Count Two require an independent scope analysis, and that question cannot be resolved against the pleader at this stage: whether handcuffed confinement in a patrol vehicle was reasonably related in scope to completing a fine-only citation the Chief had already decided did not warrant magistration is a quintessential fact question, and every inference on it belongs to Plaintiff. *T.O.*, 2 F.4th at 413.

### F. Count Three States a First Amendment Retaliation Claim.

#### 1. *Nieves* is satisfied because the Complaint pleads the absence of probable cause.

A retaliatory-arrest plaintiff must generally plead the absence of probable cause. *Nieves v. Bartlett*, 587 U.S. 391, 402 (2019). For the reasons set out in Part IV.B, the Complaint does exactly that: it pleads facts establishing that no reasonable officer could have found probable cause—or arguable probable cause—for any offense. Defendants' Count Three argument "fails for the same reasons discussed immediately above" (**Mot. at 11**)—just not in the direction Defendants intend.

#### 2. In the alternative, the *Nieves* exception applies as clarified by *Gonzalez v. Trevino*.

Even if probable cause existed, the *Nieves* rule yields where the plaintiff presents "objective evidence" that he was arrested when otherwise similarly situated persons who had not engaged in the same protected speech were not. In *Gonzalez v. Trevino*, the Supreme Court summarily

reversed this Circuit's "overly cramped" reading of that exception: a plaintiff need not produce "virtually identical and identifiable comparators," and "the only express limit" on the type of evidence "is that it must be objective." 602 U.S. 653, 657–58 (2024). *Gonzalez* arose in this posture—a Rule 12(b)(6) dismissal—and the plaintiff satisfied the exception with her *allegation*, drawn from a review of a decade of county records, that the charged statute had never been used against comparable conduct. *Id.*

The Complaint pleads objective evidence of the same character. Section 42.01(a)(1) criminalizes garden-variety public profanity in terms; public profanity is ubiquitous; and the Complaint pleads that persons who use profanity in public in Trinidad without engaging in speech critical of the government are not arrested for it. (**¶ 92**). Whether Trinidad's enforcement records confirm that allegation—as the Bexar County records confirmed Gonzalez's—is a matter for discovery; at this stage the allegation is taken as true. And the Complaint pleads a second, independently objective item *Gonzalez* did not have: the arresting officers' own recorded statements of the enforcement trigger. Defendant Beckham confirmed on camera that the arrest follows a citizen's alleged (but nonexistent) complaint of *offense* (**¶¶ 63, 92**), and Sergeant McCumsey recited "offended a citizen" as an element of the offense itself. (**¶ 45**). A recorded statement of departmental practice is objective evidence in any sense of the word, and what it establishes is that enforcement activates not on the neutral elements of the statute but on a listener's reaction to the message. An enforcement regime triggered by offense at content is, objectively, one in which the message determines the arrest. That is precisely what the exception exists to reach.

### 3. Retaliatory motive is pleaded with particularized facts, including as to Chief Gregory.

The Motion contends that Plaintiff's motive allegations are conclusory and that any animus of Chief Gregory concerned "a different person and a different arrest." (**Mot. at 13**). The Complaint pleads far more than labels. The day before the arrest, Chief Gregory published, on the Department's official page and in his official capacity, a statement characterizing critics of the Department's enforcement actions as purveyors of "misinformation," "fake news," and "fearmongering" who were "contributing to the problem." (**¶¶ 22, 90**). Plaintiff's protest the next morning was *expressly directed at that statement and the arrest it defended*. (**¶¶ 11, 23, 88**). This is not animus toward a stranger transplanted onto Plaintiff; it is published hostility toward a defined category of speakers—critics of the Department—of which Plaintiff was, visibly and by design, a member, standing outside City Hall with signs the next day. When Gregory was then briefed on scene, he continued the seizure and publicly defended it on a factual predicate the Complaint pleads he knew to be false. (**¶ 55**). Defending an arrest on a knowingly false basis is itself probative of retaliatory motive directed at *this* plaintiff.

The contemporaneous statements of the arresting officers supply the rest: McCumsey identified the offense as having "offended people inside the city hall" and refused a warning because Plaintiff had "already committed that offense" (**¶ 45**); Beckham confirmed that arrest follows a complaint of offense (**¶ 63**); and the arrest came immediately after Plaintiff challenged the officers' legal position and declined to identify himself, invoking Texas Penal Code § 38.02. (**¶ 47**). That sequence independently corroborates retaliatory causation: it has been clearly established in this Circuit since well before May 2026 that "police cannot arrest an individual solely for refusing to provide identification," *Turner v. Driver*, 848 F.3d 678, 695 (5th Cir. 2017), so the timing—twenty minutes of peaceful investigation, then handcuffs the moment Plaintiff

asserted his rights and disputed the officers' legal theory—points to the protected conduct, not to any offense, as the trigger. Officers' own words tying the arrest to the content of speech are the opposite of a "formulaic recitation."

As for Defendant Beckham's PA-system broadcast, the Complaint does not plead it as a freestanding claim; it pleads the broadcast as one act in a course of retaliatory conduct—undertaken, on information and belief, to drown out or interrupt Plaintiff's expression or trigger automated copyright takedown of his broadcast (**¶ 40**)—and interference with a journalist's recording and dissemination is cognizable adverse action whether or not it would independently support suit.

The Fifth Circuit's most recent word confirms that Count Three states a claim. In *Merriott v. City of Bossier City*, No. 25-30325, _ F.4th_, 2026 WL 1830752, 2026 U.S. App. LEXIS 18579 (5th Cir. June 25, 2026), the court reversed a Rule 12(b)(6) dismissal of a First Amendment retaliation claim brought by an online journalist who criticized city government, holding that a municipal policy penalizing "personal, impertinent or slanderous remarks" constituted viewpoint and content discrimination and was facially overbroad and vague. *Id.* at *3. *Merriott* arose in a *limited* public forum—a council meeting, where the government's authority to regulate speech is at its greatest—and the sanction was exclusion from the meeting. Here, the forum was a public sidewalk in front of City Hall, where First Amendment protection is at its zenith, and the sanction was handcuffs and initiation of prosecution. If a subjective-offense standard cannot constitutionally bar a critic from a council meeting, it cannot constitutionally arrest one on a sidewalk.

## G. Count Four States Municipal-Liability Claims Against the City of Trinidad.

### 1. The *Heller* argument falls with its premise.

Defendants' lead *Monell* argument—no underlying violation, therefore no municipal liability—rises or falls with the arguments addressed above. Because Counts One through Three are well pleaded, *City of Los Angeles v. Heller* does not assist the City.

### 2. Defendants concede the policymaker; *Pembaur* supplies the theory.

"For purposes of this Motion, Defendants do not dispute that Chief Gregory is the policymaker for police matters." (**Mot. at 22**). That concession, together with the Trinidad Code of Ordinances provisions pleaded at Paragraphs 56 and 97—which vest the Chief with unreviewable authority over the day-to-day operations of the Department, including individual arrest, magistration, citation, and release decisions—establishes the policymaker element. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–84 (1986); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

Defendants' remaining answer is that "[a] decision to release cannot be the moving force behind a seizure Chief Gregory did not commit." (**Mot. at 23**). Once more, the Motion rewrites the pleading. The Complaint does not allege a "decision to release"; it alleges a decision to *continue the seizure through cite-and-release*, made by the final policymaker, on scene, after briefing, with the unconstitutional predicate apparent on the recorded record, in preference to the two lawful options available to him. (**¶¶ 55, 98**). Where the official who holds final policymaking authority over arrest and release personally and deliberately directs the continuation of an unconstitutional seizure, his single decision *is* municipal policy, and it is the moving force behind every moment of custody that follows. *Pembaur*, 475 U.S. at 484–85. That is not ratification-by-

inaction of the kind *Peterson v. City of Fort Worth*, 588 F.3d 838, 848 (5th Cir. 2009), cabins to "extreme factual situations"; it is the policymaker's own contemporaneous act while the violation was ongoing.

#### 3. The failure-to-train theory pleads a specific deficiency and an obvious need.

Defendants assert that Plaintiff "does not identify any specific training the City failed to provide." (**Mot. at 20**). The Complaint identifies it by name: training on the First Amendment limits on arrest authority—and pleads that *none of the four Defendant officers has ever received any*. (**¶ 104**). That is a concrete, verifiable allegation about an identified deficiency—not the conclusory policy description *Spiller* condemned. 130 F.3d at 167(recognizing that policy allegations "cannot be conclusory" and "must contain specific facts"). The need for such training is patently obvious in the *Canton* sense: officers in any municipality will predictably encounter recording, protest, and criticism, and the consequence of sending wholly untrained officers into those encounters—arrests predicated on offense at protected speech—is exactly what occurred here, announced on the officers' own recordings. *City of Canton v. Harris*, 489 U.S. 378, 390 & n.10 (1989); *see generlaly Brown v. Bryan Cnty.*, 219 F.3d 450, 458–62 (5th Cir. 2000) (affirming single-incident liability where the municipality provided no training at all in the relevant area). The single-incident exception is "generally reserved for those cases in which the government actor was provided no training whatsoever," *Peña v. City of Rio Grande City*, 879 F.3d 613, 624 (5th Cir. 2018)—and a complete absence of training on the relevant subject is precisely what the Complaint pleads, verified against the officers' own TCOLE records. (**¶ 104**). And the Complaint pleads that the need was more obvious still in Trinidad in the spring of 2026, when the Department had effected two speech-adjacent arrests within weeks and its Chief was publicly branding critics as enemies of truth. (**¶¶ 22, 90, 102, 104**).

### 4. The custom theory is pleaded at the proper level of specificity.

Defendants characterize the pleaded pattern as "three different penal statutes, three different categories of conduct." (**Mot. at 19**). The similarity that matters is the similarity of the *violation*, and the Complaint pleads it with precision: in a span of weeks, the same small department directed criminal process at (i) a resident who used Facebook to organize neighbors around water-quality concerns (felony arrest under § 42.06), (ii) a journalist investigating City Hall (criminal-trespass arrest with an $8,000 bond), and (iii) a protester holding signs about both (this arrest)—each target a critic of the City's water system or its Police Department, each subjected to arrest rather than lesser process, and each arrest publicly defended by the Chief. (**¶ 102**). The Complaint further pleads that when two municipal employees contradicted the Department's narrative, the City's response was termination within days. (**¶¶ 66–72, 102(d)**).

Nor is there anything abstract about the first incident's constitutional character: arresting a resident on a felony charge for a Facebook post soliciting community information about a public-health concern is materially indistinguishable from the arrest the Fifth Circuit condemned—and denied qualified immunity for—in *Bailey v. Iles*, ) where the plaintiff was arrested under a terrorizing statute for a Facebook post about the COVID-19 pandemic. 87 F.4th at 281. The pattern pleaded is not "three different statutes" applied to unrelated conduct; it is one practice—criminal process deployed against protected speech critical of the City—applied three times in a matter of weeks. This is not a pleading that "do[es] no more than describe the incident that gave rise to [the plaintiff's] injury," *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018); it describes two prior arrests, a coordinated multi-agency response, and two retaliatory terminations, all independent of and preceding or following Plaintiff's own encounter. Whether that tightly clustered, common-target course of conduct matures into a proven custom is a question for

discovery and, if necessary, summary judgment; *Davidson* and *Peterson*—both summary-judgment decisions—do not set the pleading bar. At this stage, the allegations "nudge[]" the custom theory "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

#### 5. The remaining theories.

Plaintiff's ratification, City Administrator, and hiring theories are pleaded in the alternative, and Plaintiff stands on the Complaint as to each. (**¶¶ 99–101, 105–106**). The Court need not reach them to sustain Count Four: the conceded-policymaker *Pembaur* theory and the failure-to-train theory each independently suffice. *See* ¶ **96** ("Any one, if proved, suffices.").

### H. In the Alternative, Leave to Amend Should Be Granted.

Should the Court conclude that any claim or theory is inadequately pleaded, Plaintiff respectfully requests leave to amend under Rule 15(a)(2). This case is in its infancy; no scheduling order deadline for amendment has passed; and the deficiencies Defendants assert—to the extent any exists—concern the articulation of theories, not the absence of facts. Dismissal with prejudice, as Defendants request, would be unwarranted. Plaintiff does not merely stand on the sufficiency of his pleading; he stands ready to tender a proposed amended pleading within fourteen days of any order identifying a deficiency.

## V. CONCLUSION

The Motion succeeds only against a complaint of Defendants' own drafting. Against the complaint Plaintiff actually filed—which pleads, with record-anchored specificity, an arrest expressly predicated on offense at protected speech, effected after the officers' own investigation disproved that predicate, continued by the Department's conceded final policymaker with knowledge of its falsity, and situated within weeks of two other speech-directed arrests and the retaliatory termination of the witnesses who contradicted the official narrative—the Motion fails

at every step. Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss in its entirety or, in the alternative, grant Plaintiff leave to amend, and grant Plaintiff all other relief to which he is entitled.

Respectfully submitted,

**GRABLE PLLC**

*/s/ Brandon J. Grable*
**Brandon J. Grable**
Texas State Bar No. 24086983
brandon@grable.law
12451 Starcrest Drive, Ste 206
San Antonio, Texas 78216
Telephone: (210) 963-5297
Facsimile: (726) 215-4765
**Counsel for Plaintiff**

**CERTIFICATE OF SERVICE**

I certify that on July 17, 2026, a true and correct copy of the foregoing was served on all counsel of record by the Court's CM/ECF electronic-filing system.

*/s/ Brandon J. Grable*
Brandon J. Grable