**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **WINSTON WESLEY NOLES** | § | |
| | § | |
| ***Plaintiff,*** | § | |
| | § | |
| **v.** | § | **Civil Action No. 6:26-CV-00221** |
| | § | |
| **CHARLES W. GREGORY, ROBERT W. McCUMSEY, CAMERON W. BECKHAM, DERRICK HOCUTT, and CITY OF TRINIDAD, TEXAS** | § | |
| | § | |
| ***Defendants.*** | § | |

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO THEIR MOTION TO DISMISS**

**STATEMENT OF THE ISSUES TO BE DECIDED**

Pursuant to Local Rule CV-7(a)(1), the issues include[1] (i) whether Plaintiff's pleaded facts gave each officer at least arguable probable cause, defeating Counts One and Three; (ii) whether Plaintiff has identified controlling precedent placing the unlawfulness of each Defendant's conduct beyond debate; and (iii) whether Counts Two and Four state any plausible claim.

**FACTS**

Despite Plaintiff's arguments to the contrary (Pl.'s Resp. [#15], pp. 1, 5-7), Defendants stuck to his pleaded facts. Every fact below is from his First Amended Complaint.

Plaintiff entered Trinidad City Hall and used profanity directed at the City Administrator, insulting her. (Pl.'s 1st Am. Compl. [#5], ¶¶ 25, 28.) The Administrator directed the water clerk

---

[1]Plaintiff made an issue, though he did not say he was prejudiced, of Local Rule CV-7(a)(1), which requires "[c]ase dispositive motions shall contain a statement of the issues to be decided by the court." Defendants note, however, that it did state the issues clearly in a heading before each section and believes this satisfies the rule.

to leave her office and go elsewhere in the building. (Pl.'s 1st Am. Compl. [#5], ¶ 27.) After Plaintiff stepped outside, the Administrator locked the doors. (Pl.'s 1st Am. Compl. [#5], ¶ 31.) A municipal judge – a judicial officer of the Court – texted Officer Beckham asking him to respond. (Pl.'s 1st Am. Compl. [#5], ¶ 32.) The building was still locked when the first officer arrived; the doors were unlocked to admit him and locked again. (Pl.'s 1st Am. Compl. [#5], ¶ 39) The doors were then unlocked a second time for Sergeant McCumsey and Officer Beckham and locked again. (Pl.'s 1st Am. Compl. [#5] ¶ 42). And the water clerk told Officer Beckham she wished to leave the building to avoid escalation. (Pl.'s 1st Am. Compl. [#5], ¶ 43.)

That last fact Plaintiff never confronts. Plaintiff's argument rests on what the clerk did not say: she never said "offended," never asked that charges be filed, and never signed a complaint. (Pl.'s Resp. [#15], pp. 2, 6-7.) But a list of what a witness never said tells the Court nothing about what the officers learned: the clerk told officers that she wished to leave because she did not want the situation to escalate. (Pl.'s 1st Am. Compl. [#5], ¶ 43.) A witness who asks to leave her own workplace to avoid escalation is telling the officer she believes it can escalate.

***<u>a. Qualified immunity and clearly established law.</u>***

Qualified immunity shields an official sued in his individual capacity unless his conduct violated a right that was clearly established when he acted. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It exists to give officials notice: the rule must be so well defined that a reasonable officer would know his conduct was unlawful in the situation he actually confronted. *Dist. of Columbia v. Wesby*, 583 U.S. 48, 63 (2018).

The Court asks (1) whether the pleaded facts make out a constitutional violation, and (2) whether the right was clearly established. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Either order is permitted, and the officer wins if the answer to either is no. *Id.* at 236.

Three rules define the standard for what "clearly established" law is:

(1) **Beyond debate**. A right is clearly established only where precedent placed the question "beyond debate" - if reasonable officers could disagree, the officer is immune. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

(2) **Specific, not general**. Clearly established law "should not be defined at a high level of generality." *White v. Pauly*, 580 U.S. 73, 79 (2017). Whether the First Amendment protects speech is undisputed and decides nothing. The question is whether "the violative nature of particular conduct is clearly established." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). And specificity is "especially important in the Fourth Amendment context." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018). The plaintiff must identify a case in which an officer acting in similar circumstances was held to have violated the Constitution. *Dist. of Columbia v. Wesby*, 583 U.S. 48, 64 (2018); *City of Escondido v. Emmons*, 586 U.S. 38, 43 (2019).

(3) **Controlling authority.** Ordinarily only Supreme Court and Fifth Circuit decisions clearly establish law. *Wesby*, 583 U.S. at 63. Dicta does not clearly establish the law for qualified immunity. *Morrow v. Meachum*, 917 F.3d 870, 875 & n.6 (5th Cir. 2019).

The burden is on the plaintiff to defeat qualified immunity. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). At the pleading stage he must plead specific facts that both state a claim and overcome the defense. *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). And it is the plaintiff, not the Court, who must produce Fifth Circuit or Supreme Court precedent said to have clearly established the right. *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018).

***b. Plaintiff does not cite clearly established law.***

Plaintiff offers three decisions as the law that gave these officers notice: *Mendenhall v. Riser*, 213 F.3d 226 (5th Cir. 2000); *Sauceda v. City of San Benito*, 78 F.4th 174 (5th Cir. 2023); and *Hale v. Townley*, 45 F.3d 914 (5th Cir. 1995). (Pl.'s Resp. [#15], pp. 10, 13, 16.); Not one holds that an officer in similar circumstances violated the Constitution.

For counts one and three, Plaintiff offers *Mendenall* for the proposition that the absence of probable cause was "obvious." (Pl.'s Resp. [#15], p. 13.) A decision holding an officer immune despite a mistaken probable-cause judgment cannot be the decision that placed this arrest beyond

debate; this is not a case where the Court held something was obvious. *Morrow,* 917 F.3d at 875 & n. 6.

For counts one and three, Plaintiff offers *Sauceda*. Plaintiff argues that § 42.01 reaches only fighting words, but the footnote he quotes says the provisions apply to "fighting words or *acts*." *Sauceda*, 78 F.4th at 183 n. 2 (emphasis added). And the panel expressly declined to decide whether the conduct before it satisfied § 42.01(a), resolving the case on curtilage grounds. *Id.* at 184. A footnote in an opinion that reserved the question is dicta and cannot have placed the issue beyond debate for qualified immunity purposes. *Morrow,* 917 F.3d at 875 & n.6.

For bystander liability, Plaintiff offers *Hale.* There, officers stood by while a man was beaten. *Id*. at 919. Plaintiff offers it as the law requiring Officer Hocutt to interrupt a Class C citation. (Pl.'s Resp. [#15], p. 16.) A holding about a beating does not tell an officer what to do for a class c citation. *Emmons*, 586 U.S. at 43.

***<u>c. Count One: Arguable probable cause defeats this claim.</u>***

Probable cause is not a high bar. *Wesby*, 583 U.S. at 57. It requires only a probability or substantial chance, is measured on the totality of the circumstances, and forbids evaluating facts in isolation. *Id.* at 57, 60-61. Officers may draw "common-sense conclusions about human behavior." *Id.* at 58. Arguable probable cause is lower still: an officer is immune if a reasonable officer could have believed probable cause existed – even if he was wrong. *Mendenhall*, 213 F.3d at 230, 237.

Plaintiff argues that *Devenpeck* does not permit a defendant to substitute different facts. (Pl.'s Resp. [#15], p. 1.) Defendants' arguments derive wholly from the facts Plaintiff pleaded. And *Devenpeck* works against him because it holds that probable cause is determined objectively. *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). Plaintiff's theory that Sergeant McCumsey

misstated the elements is beside the point. An officer facing a locked building, a judge's summons, a sequestered employee, and a witness who wanted out before escalation could reasonably believe a suspect engaged in disorderly conduct. TEX. PENAL CODE § 42.01(a)(1), (2), (4).

Further, the Response treats the officers as one mind. (Pl.'s Resp. [#15], pp. 6-7, 9, 13.) Qualified immunity does not work that way. *See Wesby*, 583 U.S. at 56-57. His own pleading separates them: he places Sergeant McCumsey and Officer Beckham inside the building, but only Beckham in the interview. (Pl.'s 1st Am. Compl. [#5], ¶¶ 42, 43.) Plaintiff says the interview destroyed the basis for the arrest. But the witness told Officer Beckham that she wanted out before the situation escalated - apprehension voiced by a potential witness or victim to the officer who ordered the arrest. (Pl.'s 1st Am. Compl. [#5], ¶ 43.)

And every exculpatory fact Plaintiff marshals comes from an interview that Sergeant McCumsey never attended, overheard, or was briefed on. This is on a video in which Plaintiff owns so it is not reasonable to infer his knowledge. *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). What Plaintiff does plead is that Sergeant McCumsey knew a judge had summoned police, that a public building had been locked three times against one man, that profanity had been directed at the Administrator, and that an employee had been moved from Plaintiff's sight (Plaintiff does not separate them on these facts). (Pl.'s 1st Am. Compl. [#5], ¶¶ 25, 28, 32, 39, 42.) A reasonable sergeant could believe an offense had occurred. Plaintiff answers that this was "obvious." If so, it was obvious to no one present - not the judge, not the Administrator, not the clerk, and not four officers who investigated for twenty minutes before anyone was touched. A reasonable officer, using common-sense, could conclude a violation against the City Administrator based on her actions. *Wesby*, 583 U.S. at 57.

And an assisting officer may rely on the requesting agency's assessment. *U.S. v. Hensley*, 469 U.S. 221, 231-33 (1985). The Complaint alleges only that Officer Hocutt arrived, went inside, came out, stood nearby, and walked a handcuffed man to a car. (Pl.'s 1st Am. Compl. [#5], ¶¶ 38-39, 41-42, 47, 50.) It says nothing about what he was told, said, or knew. Plaintiff asks the Court to infer knowledge from a conversation in a room he was not in - while pleading that he holds the video. The inference is unavailable. *Iqbal*, 556 U.S. at 678-79.

Count one also fails for Chief Gregory because a causal connection requires the official to set the violation in motion. *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983). The arrest had already occurred when Chief Gregory arrived, and Plaintiff pleads no act by him preceding it. (Pl.'s 1st Am. Compl. [#5], ¶ 53.)

***d. Count Two: Plaintiff pleaded a custodial arrest.***

Plaintiff pleaded that "[t]he seizure was a full custodial arrest, not a brief investigative detention." (Pl.'s 1st Am. Compl. [#5], ¶ 75.) He should be held to it. His theory is that the arrest ended, and a new unlawful seizure began, the moment Chief Gregory decided to cite and release. (Pl.'s Resp. [#15], pp. 17-19.) At that moment Plaintiff had not been released, the citation was unwritten, and he remained in custody. He cites no decision holding that an arrest ends when an officer makes up his mind rather than when the arrestee is released. *al-Kidd*, 563 U.S. at 741. He recasts Count Two as a scope-and-duration claim, but every case he cites involves investigative detentions and he pleaded the opposite. (Pl.'s 1st Am. Compl. [#5], ¶ 75.) He calls scope "a fact question ill-suited to Rule 12(b)(6)" - but whether a right was clearly established is a question of law. *Elder v. Holloway*, 510 U.S. 510, 516 (1994).

***e. Count Three: Plaintiff's retaliation claim fails with Count One.***

A retaliatory-arrest plaintiff must plead the absence of probable cause. *Nieves v. Bartlett*, 587 U.S. 391, 402 (2019). For the reasons in section (a), Count Three fails with Count One. His use of the *Nieves* exception is also incorrect. (Pl.'s Resp. [#15], pp. 19-20.) In *Gonzalez v. Trevino*, 602 U.S. 653 (2024), the Court held only that identical comparators are not required. *Id*. at 657-58. It did not put motive evidence back on the table. *Id*. There, the records came first: the plaintiff pleaded a decade of county records showing the statute had never been used against comparable conduct. *Id.* at 657. Plaintiff pleads that unnamed people who use profanity in Trinidad have not been arrested. (Pl.'s 1st Am. Compl. [#5], ¶ 92.) Then, he claims the enforcement records are "a matter for discovery." (Pl.'s Resp. [#15], p. 20.) He asks for discovery to build the evidence the exception requires him to plead. *Gonzalez*, 602 U.S. at 657-58.

Plaintiff then offers "the arresting officers' own recorded statements of the enforcement trigger." (Pl.'s Resp. [#15], p. 20.) Statements about why these officers arrested this man are subjective motive evidence not allowed for determining probable cause. *Devenpeck*, 543 U.S. at 153. On Plaintiff's reading, every plaintiff with body-camera footage satisfies an exception the Supreme Court has twice called narrow. *Nieves*, 587 U.S. at 406; *Gonzalez*, 602 U.S. at 655.

For Chief Gregory, Plaintiff must connect the animus he alleges to the injury he suffered. *Hartman v. Moore*, 547 U.S. 250, 259-60 (2006). The statement he relies on defends a different arrest of a different person and does not mention Plaintiff, who had not yet come to Trinidad when it was published. (Pl.'s 1st Am. Compl. [#5], ¶¶ 21-23.) Plaintiff answers that Chief Gregory continued the seizure knowing its predicate was false. (Pl.'s Resp. [#15], pp. 14, 21.) That is a conclusion disguised as a fact. Plaintiff pleads that Chief Gregory "knew this predicate was false" and supports it only with the allegation that he had remote camera access and was "aware of

Plaintiff's presence" (Pl.'s 1st Am. Compl. [#5], ¶¶ 54 55.). Awareness of a man's presence is not knowledge of what he said. Plaintiff does not plead that Chief Gregory watched the interior exchange, heard Officer Beckham's interview, or was told anything beyond what his officers reported. *Iqbal*, 556 U.S. at 678.

More telling is what Chief Gregory did. He was summoned from his residence, briefed, and decided to release Plaintiff on a citation rather than magistrate him. (Pl.'s 1st Am. Compl. [#5], ¶¶ 53, 55.) A chief bent on punishing a critic does not send him home with a Class C ticket. The single act Plaintiff attributes to Chief Gregory is evidence against the motive.

***f. Plaintiff fails to meet the Monell elements.***[2]

Plaintiff defends only three of his municipal-liability theories. (Pl.'s Resp. [#15], pp. 23-26.) He must plead an official policy, adopted by a policymaker, that was the moving force behind a constitutional violation. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

A policymaker's discretionary act is not municipal policy. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126-27, 130 (1988). A deliberate choice by the official responsible for establishing final policy on the subject matter is required. *Pembaur,* 475 U.S. 469, 483 (1986).

Plaintiff only pleads that Chief Gregory arrived, took a briefing, and made a charging decision about one arrestee. (Pl.'s 1st Am. Compl. [#5], ¶¶ 53, 55.) He announced no rule, issued no policy statement under § 32.052, and directed no future conduct. On his theory, every discretionary call a chief makes is municipal policy, and *Monell*'s distinction between policy and respondeat superior disappears.

---

[2] Plaintiff's Response does not defend the following theories, each challenged separately: the City Administrator as final policymaker, ratification by the City Council, deliberate indifference in hiring, and failure to supervise and discipline. Each is abandoned. *Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006); L.R. CV-7(d).

Plaintiff offers only conclusions for failure to train: “none of the four Defendant officers has ever received any training on First Amendment limits on arrest authority,” and that this “was a moving force behind the constitutional violations alleged.” (Pl.’s 1st Am. Compl. [#5], ¶ 104.) “Moving force” is the *Monell* causation element, and the Complaint supplies nothing beyond the phrase. *Iqbal*, 556 U.S. at 678. The allegation is a naked assertion about the entire training histories of four officers, unsupported by any curriculum, record, or source, and not even made on information and belief, a qualifier Plaintiff uses in the next paragraph. (Pl.’s 1st Am. Compl. [#5], ¶ 105.)

Further, Plaintiff pleads that each Defendant serves as an officer of a Texas municipal police department. (Pl.’s 1st Am. Compl. [#5], ¶¶ 13-16.) Texas peace officers must be licensed. TEX. OCC. CODE § 1701.301. Licensure follows a mandated curriculum covering the laws pertaining to peace officers. *Id.* § 1701.253(a), (k). And that curriculum includes a required civil rights program. *Id.* § 1701.253(c). Plaintiff therefore pleaded that these officers were trained in the First Amendment.

A custom must be established by incidents other than those of which the plaintiff complains. *Pena v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018). Plaintiff describes his own arrest and two terminations that postdate it. (Pl.’s Resp., p. 26.) Conduct which occurred after an injury cannot be its moving force. *Piotrowski*, 237 F.3d at 578.

What remains is two arrests, one of which is pleaded on information and belief without naming the arrestee. (Pl.’s 1st Am. Compl. [#5], ¶ 21.) Plaintiff defends them with an abstraction - that “the similarity that matters is the similarity of the violation.” (Pl.’s Resp. [#15], p. 25) But prior incidents must “point to the specific violation in question.” *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009). At that level of generality, nearly any two incidents involving

speech is a custom. Plaintiff's distinction that *Davidson* and *Peterson* "do not set the pleading bar" because they address motions for summary judgment ignores the fract that they supply the substantive standard which is relevant regardless of the stage of litigation. *Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997).

***g. Leave to amend should be denied.***

Plaintiff has already amended once from complete factual knowledge: he alleges his entire encounter was captured on his livestream and pleads from the video with timestamp precision. (Pl.'s 1st Am. Compl. [#5], ¶¶ 38, 44, 47-48.) He names no fact he would add and tenders no proposed pleading. A request in that form does not require leave. *Goldstein v. MCI WorldCom*, 340 F.3d 238, 254-55 (5th Cir. 2003).

And the deficiencies are not curable. Whether arguable probable cause existed on facts drawn from Plaintiff's own video, whether clearly established law converts a custodial arrest into a new seizure upon a cite-and-release decision, and whether a single discretionary charging decision is municipal policy are questions of law. Any amendment would be futile.

## CONCLUSION

In sum, Plaintiff attempts to turn an investigation into conduct from within City Hall into a Free Speech violation outside City Hall. But, at bottom, Plaintiff pleaded the opposite of what he argues. Each individual defendant is entitled to qualified immunity, and Plaintiff has failed to state a plausible claim for any count.

Respectfully submitted,

**Zachary T. Smith**
State Bar No. 24140683
zachary@iglesiaslawfirm.com

**David Iglesias**
Lead Counsel
State Bar No. 24051733
david@iglesiaslawfirm.com

**IGLESIAS, PLLC**
501 Shelley Drive, Suite 125
Tyler, Texas 75701
Telephone: (903) 944-7185
Facsimile: (903) 630-5338

*Dallas Office:*
1412 Main Street, Suite 608
Dallas, Texas 75202

**COUNSEL FOR DEFENDANTS, CHARLES W. GREGORY, ROBERT W. MCCUMSEY, CAMERON W. BECKHAM, DERRICK HOCUTT, AND CITY OF TRINIDAD, TEXAS**

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2026, a copy of the foregoing was served upon all counsel of record via the Court's electronic filing system.

Zachary Smith