**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| WINSTON WESLEY NOLES, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| CHARLES W. GREGORY, | § | Case No. 6:26-cv-00221-JCB-KNM |
| ROBERT W. McCUMSEY, | § | |
| CAMERON M. BECKHAM, | § | |
| DERRICK HOCUTT, and | § | |
| CITY OF TRINIDAD, TEXAS, | § | |
| Defendants. | § | |

# PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' SECOND MOTION TO DISMISS (DKT. 28)

## TABLE OF CONTENTS

I. SUMMARY .......... 1
II. RESPONSE TO DEFENDANTS' STATEMENT OF THE ISSUES .......... 2
III. THE PLEADED FACTS .......... 2
IV. EXHIBITS 1–7 ARE NOT PROPERLY BEFORE THE COURT .......... 3
A. The recordings are not referenced in and central to the SAC. .......... 3
B. The recordings are unauthenticated and incomplete. .......... 6
C. The recordings do not "blatantly contradict" the SAC. .......... 7
D. If the Court considers the exhibits, Rule 12(d) requires conversion and Rule 56(d) relief .......... 9
V. COUNT ONE: NO REASONABLE OFFICER COULD HAVE FOUND PROBABLE CAUSE .......... 10
A. The standard. .......... 10
B. The speech subsections reach only fighting words, and nothing the officers knew came close. .......... 11
C. Even on Defendants' description of what officers were told, there was no probable cause. .......... 12
D. Each officer's knowledge. .......... 14
E. The law was clearly established. .......... 14
F. Chief Gregory and Officer Hocutt participated in the seizure .......... 15
VI. COUNT THREE: RETALIATORY ARREST .......... 16

VII. COUNT TWO: THE CONTINUED HANDCUFFED CONFINEMENT .......... 18
VIII. COUNT FOUR: MUNICIPAL LIABILITY .......... 19
A. The final policymaker's own decision. .......... 19
B. Custom and failure to train .......... 20
IX. ANY DISMISSAL ON THE STANDING GROUND MUST BE WITHOUT PREJUDICE .......... 21
X. ANY 12(b)(6) DISMISSAL SHOULD BE WITHOUT PREJUDICE .......... 21
XI. PRAYER .......... 22
Certificate of Service .......... 23

# TABLE OF AUTHORITIES

## Cases

*Alexander v. City of Round Rock*, 854 F.3d 298 (5th Cir. 2017) .................. 14
*Arnold v. Williams*, 979 F.3d 262 (5th Cir. 2020) .................. 10
*Bailey v. Iles*, 87 F.4th 275 (5th Cir. 2023) .................. 10
*Bass v. Jackson*, 776 F. Supp. 3d 535 (E.D. Tex. 2025) .................. 5
*Bigford v. Taylor*, 834 F.2d 1213 (5th Cir. 1988) .................. 13
*Brown v. Bryan Cnty.*, 219 F.3d 450 (5th Cir. 2000) .................. 20
*Carswell v. Camp*, 54 F.4th 307 (5th Cir. 2022), *cert. denied*, 144 S. Ct. 73 (2023) ........ 10
*Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942) .................. 11
*City of Canton v. Harris*, 489 U.S. 378 (1989) .................. 20
*City of Houston v. Hill*, 482 U.S. 451 (1987) .................. 12, 15
*City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988) .................. 19, 20
*Cohen v. California*, 403 U.S. 15 (1971) .................. 11, 12, 15, 20
*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000) .................. 4
*Darden v. City of Fort Worth*, 880 F.3d 722 (5th Cir. 2018) .................. 7
*Devenpeck v. Alford*, 543 U.S. 146 (2004) .................. 13
*District of Columbia v. Wesby*, 583 U.S. 48 (2018) .................. 10
*Emesowum v. Cruz*, 756 F. App'x 374 (5th Cir. 2018) .................. 18
*Florida v. Royer*, 460 U.S. 491 (1983) .................. 18
*Freeman v. Gore*, 483 F.3d 404 (5th Cir. 2007) .................. 14
*Fuqua v. Santa Fe Cnty. Sheriff's Off.*, 157 F.4th 1288 (10th Cir. 2025), *cert. denied sub nom. Zook v. Fuqua*, 226 L. Ed. 2d 10 (2026) .................. 6
*Goldstein v. MCI WorldCom*, 340 F.3d 238 (5th Cir. 2003) .................. 22
*Gonzalez v. Trevino*, 602 U.S. 653 (2024) .................. 17
*Gooding v. Wilson*, 405 U.S. 518 (1972) .................. 11, 13
*Gregory v. Dawdy*, No. 26-1486, 2026 U.S. App. LEXIS 35637 (3d Cir. Nov. 20, 2026) ... 5
*Groden v. City of Dallas*, 826 F.3d 280 (5th Cir. 2016) .................. 19
*Hale v. Townley*, 45 F.3d 914 (5th Cir. 1995) .................. 16
*Harmon v. City of Arlington*, 16 F.4th 1159 (5th Cir. 2021) .................. 4, 7
*Head v. State*, 131 Tex. Crim. 96, 96 S.W.2d 981 (Tex. Crim. App. 1936) (op. on reh'g) 11
*Hodge v. Engleman*, 90 F.4th 840 (5th Cir. 2024) .................. 4, 9
*Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719 (5th Cir. 2018) .................. 14, 15
*Keenan v. Tejeda*, 290 F.3d 252 (5th Cir. 2002) .................. 16, 17
*Lewis v. City of New Orleans*, 415 U.S. 130 (1974) .................. 12, 15
*Lozano v. Smith*, 718 F.2d 756 (5th Cir. 1983) .................. 15
*Malley v. Briggs*, 475 U.S. 335 (1986) .................. 15
*Mendenhall v. Riser*, 213 F.3d 226 (5th Cir. 2000) .................. 10
*Mesa v. Prejean*, 543 F.3d 264 (5th Cir. 2008) .................. 15
*Mitchell v. Bailey*, 982 F.3d 937 (5th Cir. 2020) .................. 21
*Nieves v. Bartlett*, 587 U.S. 391 (2019) .................. 17
*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) .................. 19, 20
*Polnac v. City of Sulphur Springs*, 555 F. Supp. 3d 309 (E.D. Tex. 2021) .................. 5

*Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757 (5th Cir. 2011) ........................ 3
*Rios v. Perez*, 777 F. Supp. 3d 727 (W.D. Tex. 2025) ................................................ 15, 16
*Ross v. State*, 802 S.W.2d 308 (Tex. App.—Dallas 1990, no pet.) ............................ 11, 14
*Sanchez v. Nunemaker*, 179 F.4th 315 (5th Cir. 2026)...................................................... 7
*Sanders v. City of Houston*, 543 F. Supp. 694 (S.D. Tex. 1982), *aff'd without opinion*, 741 F.2d 1379 (5th Cir. 1984)................................................................................................ 18
*Sauceda v. City of San Benito*, 78 F.4th 174 (5th Cir. 2023).......................................... 15
*Scott v. Harris*, 550 U.S. 372 (2007) ................................................................................. 7
*Spiller v. City of Texas City*, 130 F.3d 162 (5th Cir. 1997) ................................ 11, 13, 15
*Torres v. Madrid*, 592 U.S. 306 (2021) ............................................................................ 16
*Turner v. Driver*, 848 F.3d 678 (5th Cir. 2017) .............................................................. 17
*Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021)........................................................... 21
*Vela v. White*, 703 F.2d 147 (5th Cir. 1983) .................................................................... 11
*Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429 (7th Cir. 1993) ............... 4
*Whitley v. Hanna*, 726 F.3d 631 (5th Cir. 2013) ............................................................ 16
*Winder v. Gallardo*, 118 F.4th 638 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 2816 (2025).. 4

**Statutes, Ordinances, and Rules**

Tex. Penal Code § 42.01 ..........................................................2, 9, 11, 12, 13, 14, 15, 20
Tex. Penal Code § 42.04 ...................................................................................................... 13
Trinidad, Tex., Code of Ordinances §§ 32.048, 32.052, 32.053......................................... 19
Fed. R. Civ. P. 12(b)(1) ........................................................................................................ 21
Fed. R. Civ. P. 12(b)(6) ................................................................................................ 3, 5, 21
Fed. R. Civ. P. 12(d) ........................................................................................................ 2, 3, 9
Fed. R. Civ. P. 15(a)(2) ........................................................................................................ 21
Fed. R. Civ. P. 41(b) ............................................................................................................ 21
Fed. R. Civ. P. 56.......................................................................................................... 1, 9, 10, 22
E.D. Tex. Local Rule CV-7(k)............................................................................................... 21

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

Plaintiff Winston Wesley Noles files this Response in Opposition to Defendants' Second Motion to Dismiss (Dkt. 28, the "Motion") and respectfully shows the Court as follows:

## I. SUMMARY

1. The Motion does not test the Second Amended Complaint (Dkt. 20, "SAC"). It asks the Court to "disregard Plaintiff's untrue facts" and decide the case on the facts "left" after reviewing six conventionally filed recordings, offered without any authenticating declaration, plus a 2025 training outline. Dkt. 28 at 10–11; Dkt. 28-1 to 28-7; Dkt. 29 at 1–2. That is summary judgment without Rule 56. The exhibits are not referenced in or central to the SAC, and they should be excluded.

2. On the SAC, the claims are well pleaded. Plaintiff was arrested for "Disorderly Conduct (Language)" after a single self-deprecating joke inside City Hall and political signs outside it. SAC ¶¶ 24–25, 29–30, 51. The sergeant defined the offense as profanity that "offended" a citizen. *Id.* ¶ 38(a). The only such citizen present had made no complaint to the arresting officer. *Id.* ¶¶ 35, 54(c). Even accepting the Motion's description of the recordings, there was no probable cause.

3. Plaintiff narrows the dispute where candor requires. He does not oppose dismissal, without prejudice, of the request for prospective relief (SAC Prayer ¶¶ A–B); does not press the hiring theory of Count Four (SAC ¶ 103) at this stage; and does not oppose dismissal of Count Three as to Defendant Hocutt only, without prejudice.

## II. RESPONSE TO DEFENDANTS' STATEMENT OF THE ISSUES

4. **Issue 1 (qualified immunity, Counts One–Three).** No. On the SAC, no reasonable officer could have found probable cause under any subsection of Texas Penal Code § 42.01(a); motive is pleaded with facts; and the law was clearly established.

5. **Issue 2 (municipal liability, Count Four).** Yes, as to the final-policymaker theory, and the custom and training theories are plausibly pleaded.

6. **Issue 3 (standing).** Plaintiff does not oppose dismissal of Prayer ¶¶ A–B to the extent they seek prospective relief, without prejudice.

7. **Additional issue.** Whether the Court may consider Exhibits 1–7 without converting the Motion under Rule 12(d). It may not.

## III. THE PLEADED FACTS

8. The day before, Chief Gregory used the Department's Facebook page to defend the felony arrest of a resident who asked about water-related illness and to brand critics "fake news." SAC ¶¶ 16–20. Plaintiff, a citizen journalist, came to protest. *Id.* ¶¶ 1, 20. He made one self-deprecating joke, which the clerk "found humorous," and left on his own without yelling or threatening anyone. *Id.* ¶¶ 24–25. After he set up signs and a camera on the sidewalk, the Administrator locked the door; Plaintiff "briefly tried the door." *Id.* ¶ 26. No one called 9-1-1. The municipal judge, who never saw Plaintiff, texted Officer Beckham, "Need you 911," and on the callback asked that an officer check on the man, not for an arrest or other enforcement. *Id.* ¶ 27.

9. Officer Hocutt spent six minutes inside gathering information. *Id.* ¶¶ 32, 42. Officer Beckham arrived playing "I Fought the Law" over his loudspeaker, then interviewed the clerk on his body camera. She did not report being offended, frightened, or threatened, and made no complaint. *Id.* ¶¶ 33, 35, 54(c). When Plaintiff declined to identify himself, McCumsey announced disorderly conduct, gave the elements described above, refused a warning, and did not identify the offended citizen. *Id.* ¶ 38. After 20 minutes without violence or altercation, Beckham said "Hook him up," and McCumsey handcuffed Plaintiff. *Id.* ¶¶ 40–43.

10. Plaintiff sat handcuffed in a closed patrol car in warm weather for 30 to 40 minutes while the officers waited for Chief Gregory. *Id.* ¶ 44. The judge declined to have Plaintiff either brought before her or booked. *Id.* ¶ 37. After Gregory decided to cite and release him, Plaintiff stayed cuffed at least 20 more minutes. *Id.* ¶¶ 46–49. The clerk later swore she was "NEVER OFFENDED," (which is not an element regardless) and the charge was dismissed. *Id.* ¶¶ 55–56.

## IV. EXHIBITS 1–7 ARE NOT PROPERLY BEFORE THE COURT

11. The Motion's probable-cause argument depends on the exhibits. Its "facts" section cites the SAC once. Dkt. 28 at 2–4. Plaintiff objects to the Court's consideration of Exhibits 1–7 and asks the Court to exclude them under Rule 12(d).

### A. The recordings are not referenced in and central to the SAC.

12. On a Rule 12(b)(6) motion, the Court may consider the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott, M.D., P.A. v.*

*Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (cleaned up). A document attached to a motion is part of the pleadings only if it is "referred to in the plaintiff's complaint and [is] central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

13. Video is no different. In *Hodge v. Engleman*, the plaintiff neither attached the videos nor referred to them sufficiently to incorporate them, so by reviewing the "appended video evidence," the district court "moved beyond the pleadings and to the summary judgment stage." 90 F.4th 840, 843–45 (5th Cir. 2024); *see Harmon v. City of Arlington*, 16 F.4th 1159, 1162–64 (5th Cir. 2021). *Winder v. Gallardo*, on which the Motion relies, considered video because the plaintiffs themselves "referenced the video in their complaint and brief." 118 F.4th 638, 643 (5th Cir. 2024) (per curiam), *cert. denied*, 145 S. Ct. 2816 (2025); Dkt. 28 at 2 n.1.

14. The SAC attaches no recording. It mentions recordings in passing, almost always Plaintiff's Livestream, the Helms Recording, or the City's surveillance video, none of which Defendants filed. The paragraphs the Motion lists, Dkt. 28 at 2 n.1, use the Livestream as a clock (¶¶ 29–31, 33, 38, 40–41) or describe recordings not attached (¶¶ 28, 45, 52).

15. Nor are the recordings "central." Each claim rests on what Plaintiff said, what the officers were told, what McCumsey said the offense was, and how long Plaintiff sat handcuffed. SAC ¶¶ 24–27, 35, 37–41, 44, 49. A recording of them is evidence, not the claim.

16. Exhibit 2 is the only exhibit with a colorable claim to incorporation, because the SAC alleges that Officer Beckham interviewed the clerk "with his body-worn camera activated." SAC ¶¶ 35, 47, 52, 54(c). Even so, the SAC pleads what the clerk said, not the recording, and the Motion uses Exhibit 2 for much more. Dkt. 28 at 3, 6–7; SAC ¶ 37. At most, the Court could consider the clerk interview, and only if authentic and complete; the file begins partway through it. *See* Part IV.B.

17. A Third Circuit panel recently reached the same result. In *Gregory v. Dawdy*, the complaint twice alleged what could be heard "on body cam footage," but its references were "few and fleeting." No. 26-1486, 2026 U.S. App. LEXIS 35637, at *3 (3d Cir. Nov. 20, 2026) (nonprecedential). The footage therefore "was not sufficiently integral to or explicitly relied upon in Gregory's Complaint to be considered on a motion to dismiss." *Id.* at *5.

18. Courts in this District agree. *Bass v. Jackson*, 776 F. Supp. 3d 535, 545 (E.D. Tex. 2025) (declining to consider body-camera footage that "was mentioned once in passing in the complaint"); *Polnac v. City of Sulphur Springs*, 555 F. Supp. 3d 309, 326 (E.D. Tex. 2021) (footage "not sufficiently incorporated into the Complaint" is "not a proper point of consideration at the Rule 12(b)(6) stage").

19. Exhibit 7 is a TCOLE course outline "Revised September 2025." Dkt. 28-7 at 1. It says nothing about what these officers were taught, or when, *see* SAC ¶ 101, and nothing about fighting words or retaliatory arrest.

### B. The recordings are unauthenticated and incomplete.

20. An exhibit outside the complaint may be considered only if its authenticity is not in dispute; a video's "mere presence in the record" is not enough. *Fuqua v. Santa Fe Cnty. Sheriff's Off.*, 157 F.4th 1288, 1297–98 (10th Cir. 2025), *cert. denied sub nom. Zook v. Fuqua*, 226 L. Ed. 2d 10 (2026). Plaintiff does not concede the authenticity or completeness of these recordings.

21. **Not authenticated.** The Notice identifies the recordings only by file name, Dkt. 29 at 1, and no declaration or custodian says who recorded each file, on what device, or how it was exported. The files do not fill that gap. The body-camera files show a placeholder device number ("123456789" or "000000") that identifies no wearer, and the car-camera file bears a video-software processing tag. Each file name carries a May 28, 2026 date, 16 days after the events, indicating a later export no one has described.

22. **Not complete.** By their own on-screen clocks, no file covers 2:37 to 2:52 p.m., when Gregory arrived, or 2:53 to 3:02 p.m. *See* SAC ¶ 51. Exhibit 2 begins in the middle of the clerk's interview. Beckham's camera, which made Exhibits 2 and 3, sits inside a vehicle at Exhibit 2, 5:50–6:55, and Exhibit 3, 0:50–1:44; the second window is when McCumsey stated the elements to Plaintiff. Ex. 4, 12:14–13:51. Exhibit 1's purported record of the judge's call (0:01–0:17) is poor-quality telephone audio heard through a patrol-car cabin. Nothing filed covers Hocutt's six minutes inside, and the City's surveillance video is omitted. SAC ¶¶ 28, 52.

23. **Not accurately described.** Several of the Motion's citations do not match the files. Exhibit 2 has no 12:16–12:17, Dkt. 28 at 3; it runs 7 minutes 27

seconds. "[W]e don't even care about that" is in Exhibit 5 at about 2:23, not Exhibit 4 at 2:25–2:59. *Id.* at 16–17. Exhibit 4 at 7:41–7:49 is an exchange about Plaintiff's equipment before the arrest; McCumsey's report to Gregory is at about 17:41. *Id.* at 4, 12. Exhibit 3 at 2:29–2:44 says nothing of an "investigation inside City Hall," *id.* at 3; it records "Hook him up." In Exhibit 6, cited for what Gregory "learned," he is the one speaking. *Id.* at 4. And nothing audible in Exhibit 1 refers to a "disturbance" or to business having "halted." *Id.* at 2–3, 7. Some may be typographical, but they show why Defendants' descriptions cannot displace the SAC.

### C. The recordings do not "blatantly contradict" the SAC.

24. Even video incorporated into the pleadings is "viewed in the light most favorable to the plaintiff" and is adopted over the complaint only "if the video 'blatantly contradict[s]' those allegations." *Harmon*, 16 F.4th at 1163 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)); *see Sanchez v. Nunemaker*, 179 F.4th 315, 318 (5th Cir. 2026). "[A] court should not discount the nonmoving party's story unless the video evidence provides so much clarity that a reasonable jury could not believe his account." *Darden v. City of Fort Worth*, 880 F.3d 722, 730 (5th Cir. 2018).

25. The recordings do not show what happened inside City Hall. They record what witnesses later told officers, chiefly about the locked door. Dkt. 28 at 2–3, 6–7. A witness's account to an officer is not video of the event; it cannot "blatantly contradict" the SAC's account of what Plaintiff did, and weighing the two is for the jury. Plaintiff does not contend that the recordings match every peripheral detail of the SAC. On what matters—what Plaintiff said, what the officers were told, and what

they said the offense was—the recordings, if considered, support the SAC. See also Part V.

26. Without waiving his objection, Plaintiff notes that if the Court considers the exhibits, they show that the stated basis for the arrest was offense at Plaintiff's speech. Told that Plaintiff had been taking pictures, Beckham said, "Not illegal." Ex. 2, 0:05. The Malakoff Chief then says "we need to do something," and Beckham answers, "We're fixing to do something." *Id.* at 1:24–1:31. Asked whether Plaintiff was cussing inside, the judge said, "Not at that point." *Id.* at 2:34–2:39. Beckham then asked, "were y'all offended when he was cussing?"; then-City Administrator Sam Dozier, a public servant, SAC ¶ 22, responded, "Yes." *Id.* at 3:04–3:08. The question concerned cussing outside, and the answer was not a complaint. Nor could it supply the offended citizen: as McCumsey and Gregory each defined the offense, a public servant's offense did not count. Ex. 4, 12:22–12:30; Ex. 5, 1:21–1:24. Beckham's briefing to McCumsey followed: "they were offended . . . with all the cussing and everything like that, and obviously this sign." Ex. 2, 3:49–4:00; Ex. 4, 7:58. It mentions no weapon. Before Plaintiff was asked for identification, the officers were discussing a disorderly conduct charge "times three"; that they would criminally trespass "his ass" from City Hall; that they would "get his ID so we can identify him, and then probably [MuCumsey]'s going to take him into custody"; and that they "can't really have all that bullshit here." Ex. 2, 4:12–5:28. McCumsey told Plaintiff the crime he was being charged with: "You have offended people inside the City Hall . . . which are not public servants." Ex. 4, 12:22–12:30. Gregory framed it the same way. *See*

Part VIII.A. After the arrest, the judge said, "I'm not afraid of him. . . . [H]e was just in here commenting about stuff." Ex. 3, 12:07–12:10. No recording has the clerk saying she was offended or afraid.

27. Defendants say the judge retrieved a weapon, Dkt. 28 at 2–3, 6–8, 10–11, 18, 29, sourcing it only to Exhibit 1 at 0:01–0:17. That is the poor-quality call audio described above. Its content is disputed, and at most it is a secondhand report from a judge who never saw Plaintiff. SAC ¶ 27. Beckham's recorded briefing of McCumsey, who issued the citation, does not mention it. SAC ¶ 51. No officer acted as though a weapon was at issue. Nor is a weapon relevant. The charge was "Disorderly Conduct (Language)," SAC ¶ 51, an offense defined by the speaker's own words. Tex. Penal Code § 42.01(a)(1). It has no weapon element, and a judge's retrieving her own weapon, if she did, is someone else's conduct and irrelevant to whether Plaintiff's words were fighting words.[1]

### D. If the Court considers the exhibits, Rule 12(d) requires conversion and Rule 56(d) relief.

28. If matters outside the pleadings "are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). A court that relies on such material without saying so converts the motion implicitly. *Hodge*, 90 F.4th at 843–45. Plaintiff cannot present facts essential to his opposition to a converted motion, for the reasons

[1] To the extent Defendants suggest that any weapon was involved, they identify no weapons offense, and none was charged. SAC ¶ 51. A weapon has nothing to do with a charge defined by the speaker's own words.

in counsel's declaration. Fed. R. Civ. P. 56(d); Ex. A. He needs the native and omitted recordings with their export records, the City's interior surveillance video, and discovery from the witnesses, including the judge. Ex. A ¶¶ 3–8.

29. The proper course is to exclude Exhibits 1–7 and decide the Motion on the SAC. Alternatively, if the Court considers any recording, it should deny the Motion without prejudice to a later summary-judgment motion, or defer ruling under Rule 56(d)(1) until Defendants produce the complete recordings.[2]

## V. COUNT ONE: NO REASONABLE OFFICER COULD HAVE FOUND PROBABLE CAUSE

### A. The standard.

30. A warrantless arrest requires facts within the officer's knowledge at the moment of arrest sufficient for a reasonable person to conclude the suspect had committed an offense. *District of Columbia v. Wesby*, 583 U.S. 48, 56–57 (2018). Qualified immunity "cannot succeed where it is obvious that a reasonably competent officer would find no probable cause." *Mendenhall v. Riser*, 213 F.3d 226, 230–31 (5th Cir. 2000). Reasonableness is measured against the statute's text and the state courts' construction of it. *Bailey v. Iles*, 87 F.4th 275, 287 (5th Cir. 2023). There is no heightened pleading standard for overcoming qualified immunity. *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020).

[2] This request is consistent with *Carswell v. Camp*, 54 F.4th 307, 311–12 (5th Cir. 2022), *cert. denied*, 144 S. Ct. 73 (2023), which forbids deferring a qualified-immunity ruling on the pleadings to permit discovery. Plaintiff asks the Court to rule on the pleadings now. Only if Defendants' own evidence is to be considered does Rule 56(d) apply, and then only to the recordings Defendants put at issue.

31. Plaintiff agrees that probable cause is measured at the moment of arrest. Dkt. 28 at 8–9. The SAC pleads later events for motive, custom, and the Council's response, not to measure probable cause. SAC ¶ 62.

### B. The speech subsections reach only fighting words, and nothing the officers knew came close.

32. Section 42.01(a)(1) punishes profane language only if it "by its very utterance tends to incite an immediate breach of the peace." Tex. Penal Code § 42.01(a)(1). The First Amendment allows punishment of offensive words only when they are "fighting words," and the provision reaches no further. *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942); *Gooding v. Wilson*, 405 U.S. 518, 524–28 (1972); *Cohen v. California*, 403 U.S. 15, 20 (1971); *Ross v. State*, 802 S.W.2d 308, 314–15 (Tex. App.—Dallas 1990, no pet.). Defendants' 1936 definition of "peace" as the "tranquillity enjoyed by the citizens of a municipality," Dkt. 28 at 5–7 (citing *Head v. State*, 131 Tex. Crim. 96, 99, 96 S.W.2d 981 (Tex. Crim. App. 1936) (op. on reh'g)), does not change the test. Subsection (a)(1) asks whether the words themselves tend to incite an immediate breach, not whether others were unsettled. *See Gooding*, 405 U.S. at 522–24. A motorist's demand that an officer "move his damn truck" "cannot reasonably be interpreted as an invitation to fisticuffs." *Spiller v. City of Texas City*, 130 F.3d 162, 164–65 (5th Cir. 1997); *see Vela v. White*, 703 F.2d 147, 152 (5th Cir. 1983).

33. The facts the officers knew do not approach that line. Plaintiff made one self-deprecating joke, which the clerk "found humorous." SAC ¶ 24. And the officers identified offense, not fighting words: McCumsey defined the crime as profanity that

"offended" a citizen and refused a warning because Plaintiff had "already committed" it. Id. ¶ 38(a)–(b). Listener offense cannot justify punishing speech. *See Cohen*, 403 U.S. at 21; *Lewis v. City of New Orleans*, 415 U.S. 130, 133–34 (1974). Even that invented element failed: the only private citizen present had reported no offense to Beckham. SAC ¶¶ 35, 54(c).

34. Subsection (a)(4), which Defendants also invoke, requires abuse or threats "in an obviously offensive manner." Tex. Penal Code § 42.01(a)(4). No one, even in Defendants' version, reported any threat. A joke about a surname that its audience found funny is not abuse. The reason the officers gave among themselves was that they "can't really have all that bullshit here." Ex. 2, 5:05.

### C. Even on Defendants' description of what officers were told, there was no probable cause.

35. Defendants' case comes down to this: after being locked out, Plaintiff pulled at the door and asked, "Why the fuck would you do that?"; he was "yelling and hollering"; the judge heard a "loudmouth getting louder" and armed herself; and the clerk was "shook up." Dkt. 28 at 6–7, 10–11. Even accepted, it does not supply probable cause.

36. *First*, a single profane question to an official who has just locked a citizen out of City Hall during normal business hours is protest, not fighting words. The "freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *City of Houston v. Hill*, 482 U.S. 451, 462–63 (1987). If

"move his damn truck" was not an invitation to fight, *Spiller*, 130 F.3d at 164–65, neither is "why would you do that?" with an expletive.

37. *Second*, neither a listener's fear nor a locked door is an element. The test under (a)(1) is whether the words themselves tend to provoke the person addressed to immediate violence, not whether a listener in another room is alarmed. *Gooding*, 405 U.S. at 523–24. Nor does an official's decision to lock a door turn the speaker's words into fighting words. A judge who never saw Plaintiff, and a clerk sent away before he spoke, do not make speech fighting words by their reactions. SAC ¶¶ 23, 27.

38. *Third*, "unreasonable noise," § 42.01(a)(5), does not help Defendants. When conduct that would otherwise violate the noise provision "consists of speech or other communication," "the actor must be ordered to move, disperse, or otherwise remedy the violation prior to his arrest" if he has not yet intentionally harmed the interests the provision protects. Tex. Penal Code § 42.04(a). Officers gave no such order. McCumsey refused Plaintiff's offer to stop. SAC ¶¶ 31, 38(b). Whatever noise there was at the door had ended 30 minutes before the arrest, and the officers themselves observed 20 minutes with no breach of the peace. Id. ¶¶ 2, 41.

39. *Fourth*, a locked door and a sent-home employee are what City officials did, not what Plaintiff did. SAC ¶¶ 23, 26. And the officers had the answer: the clerk had made no complaint. SAC ¶¶ 35–36. Officers "may not disregard facts tending to dissipate probable cause." *Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988).

40. Defendants' restaurant hypothetical describes a case no one pleaded. Dkt. 28 at 10; *see* SAC ¶ 51. *Devenpeck v. Alford* lets an officer rely on another offense the

known facts support, 543 U.S. 146, 153 (2004); it does not let the Court supply facts the pleading denies, and Defendants have briefed only § 42.01. *See Alexander v. City of Round Rock*, 854 F.3d 298, 306 n.3 (5th Cir. 2017).

### D. Each officer's knowledge.

41. Qualified immunity is assessed officer by officer. Beckham personally interviewed the clerk, who made no complaint, and gave the order "Hook him up." SAC ¶¶ 35, 40. McCumsey conferred with Beckham before the arrest, and the SAC pleads that he knew the clerk had not complained. *Id.* ¶ 36. Whatever he was told, his own words confirm what he understood the case to be: offense at language, with an offended private citizen he did not name. *Id.* ¶ 38. Offense is not fighting words. See Part V.B. That knowledge is pleaded as fact, and at this stage the Court must accept it. *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 730 (5th Cir. 2018) (allegations on information and belief permitted where the facts are peculiarly within the defendants' knowledge).

### E. The law was clearly established.

42. It is "beyond question" that a person has "a clearly established constitutional right to be free from arrest absent an arrest warrant or probable cause." *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007). The question is whether a reasonable officer could have thought probable cause existed, and that is measured against the statute's text and the state courts' construction of it. *Bailey*, 87 F.4th at 287. Texas courts had confined § 42.01(a)(1) to fighting words for more than 30 years. *Ross*, 802 S.W.2d at 314–15. The Supreme Court had foreclosed offense as a basis for

punishing speech for 50. *Cohen*, 403 U.S. at 20–21; *Lewis*, 415 U.S. at 133–34; *Hill*, 482 U.S. at 461–63. This Circuit had applied the rule to § 42.01 itself. *Spiller*, 130 F.3d at 164–65.

43. Plaintiff does not rely on *Sauceda v. City of San Benito*, 78 F.4th 174, 183 n.2 (5th Cir. 2023) (noting that "Texas courts have held that these provisions apply only to 'fighting words or acts'"), to clearly establish anything. An officer who arrests a protester for words his own investigation showed offended no one is "plainly incompetent." *See Malley v. Briggs*, 475 U.S. 335, 341 (1986).

### F. Chief Gregory and Officer Hocutt participated in the seizure.

44. **Gregory.** Personal involvement may rest on "a causal connection between an act of the sheriff and the constitutional violation sought to be redressed." *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983). Defendants' own authority describes the required "overt personal participation" as one that "generally requires a 'command, signal, or . . . other form of direction to the [subordinate] officers.'" *Rios v. Perez*, 777 F. Supp. 3d 727, 765 (W.D. Tex. 2025) (quoting *Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008)); *see* Dkt. 28 at 12. Officers held Plaintiff 30 to 40 minutes waiting for Gregory to "give further instructions"; Gregory was briefed and personally decided the seizure would continue through cite-and-release. SAC ¶¶ 44, 46–47. The SAC also pleads, on information and belief supported by facts, that Gregory authorized the arrest itself, including through the plan alleged in ¶ 36. SAC ¶¶ 28, 36, 44–45, 70; *see Innova*, 892 F.3d at 730. Exhibits 4 through 6, if considered, do not establish otherwise. Dkt. 28 at 4, 12, 16. The recorded call is one call, made after the

handcuffing; nothing shows what information was available to Gregory, what other calls he had or what he was told, and no file covers his arrival and briefing. During the call, McCumsey warns, "Hey, careful, you're on your own body cam." Ex. 4, 17:31. That suggests awareness that the conversation was being recorded, and that other conversations were not. Gregory's recorded remarks are his own after-the-fact account, whose truth Plaintiff disputes. The SAC, including ¶¶ 36 and 45, controls, and the inferences belong to Plaintiff.

45. **Hocutt.** Hocutt gathered the information inside City Hall used as the basis for the arrest, stood within arm's reach during the handcuffing, and then took physical custody of Plaintiff and walked him to the patrol car. SAC ¶¶ 42–43. Applying force to restrain movement is a seizure. *Torres v. Madrid*, 592 U.S. 306, 325 (2021). *Rios*'s supervisory standard does not apply to an officer who takes custody himself. Alternatively, Hocutt is liable as a bystander: he knew the stated basis, had time and no exigency in which to object, and did nothing. SAC ¶¶ 42–43; *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013); *see Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995).

## VI. COUNT THREE: RETALIATORY ARREST

46. A retaliation claim requires that the plaintiff engaged in protected activity, suffered an injury that would chill a person of ordinary firmness, and that the defendant's action was substantially motivated by the protected activity. *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). A retaliatory-arrest plaintiff generally

must also plead the absence of probable cause. *Nieves v. Bartlett*, 587 U.S. 391, 402 (2019). Plaintiff does: see Part V.

47. Motive is pleaded with facts. The day before, the Chief branded critics "fake news"; Plaintiff came to protest that. SAC ¶¶ 20, 89(a). The sergeant tied the arrest to listener offense and refused a warning because the speech had already occurred. Id. ¶¶ 38(a)–(b), 89(b). The arrest came after 20 minutes without incident, when Plaintiff declined to identify himself and disputed the officers' reading of the law. *Id.* ¶¶ 40, 89(d); *see Turner v. Driver*, 848 F.3d 678, 695 (5th Cir. 2017). If considered, the exhibits show the officers giving offense at Plaintiff's words and sign as the reason. *See* Part IV.C. Gregory's "we don't even care about that," Dkt. 28 at 16, is followed by his remark that Plaintiff "was up here holding a sign saying fuck [the police]" and, of Plaintiff's criminal defense lawyer, "They're stirring up all kinds of mess because . . . we made an arrest the other day." Ex. 5, 2:23–3:17; *see* SAC ¶¶ 17–20.

48. The loudspeaker music is pleaded as evidence of motive, not as a freestanding adverse action. SAC ¶ 90. Alternatively, the *Nieves* exception applies: people who curse in public in Trinidad without criticizing the government are not arrested for it. SAC ¶ 91(e); *Gonzalez v. Trevino*, 602 U.S. 653, 657–58 (2024). And "[i]f no reasonable police officer could have believed that probable cause existed," a retaliatory arrest "violated clearly established law in this circuit." *Keenan*, 290 F.3d at 262.

49. As to Defendant Hocutt only, Plaintiff does not oppose dismissal of Count Three without prejudice.

## VII. COUNT TWO: THE CONTINUED HANDCUFFED CONFINEMENT

50. Count Two stands with Count One. If the arrest lacked probable cause, every minute of custody was an unreasonable seizure, including the final 20 minutes after Gregory decided to release Plaintiff. Count Two separately pleads the time for which Gregory is personally responsible. SAC ¶¶ 49–50, 83.

51. Plaintiff recognizes that a custodial arrest supported by probable cause may include the time reasonably needed to complete the paperwork. But whether keeping a cooperative man handcuffed in a closed car in warm weather for 20 more minutes, after the Chief had decided there would be no magistration, was reasonable in manner and duration is a fact question. *Cf. Florida v. Royer*, 460 U.S. 491, 500 (1983) (plurality op.) (detention must "last no longer than is necessary to effectuate the purpose of the stop"); *Emesowum v. Cruz*, 756 F. App'x 374, 379 (5th Cir. 2018) (cited at Dkt. 28 at 19) (no reasonable officer could think the Fourth Amendment allowed holding a person handcuffed in a police cruiser after the justifying suspicion was dispelled). *Sanders v. City of Houston*, 543 F. Supp. 694, 702 (S.D. Tex. 1982), *aff'd without opinion*, 741 F.2d 1379 (5th Cir. 1984), sets a deadline for presentment, not a license to keep a person cuffed once there will be none. If considered, the recordings show Plaintiff handcuffed at about 2:19 p.m. and told he was free to go at about 3:10 p.m. Ex. 3, 2:29; Ex. 5, 8:32.

## VIII. COUNT FOUR: MUNICIPAL LIABILITY

### A. The final policymaker's own decision.

52. Municipal liability "may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). "[W]hether an official had final policymaking authority is a question of state law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988) (plurality op.) (quoting *Pembaur*, 475 U.S. at 483 (plurality opinion)). A plaintiff need only plead facts making it plausible that a policymaker adopted the policy. *Groden v. City of Dallas*, 826 F.3d 280, 284–86 (5th Cir. 2016). The SAC pleads that Trinidad's Code vests the Chief with day-to-day operation of the Department and the power to issue orders and policy statements, and subjects his individual arrest, magistration, citation, and release decisions to no review. SAC ¶ 96 (citing Trinidad Code §§ 32.048, 32.052, 32.053). The Motion does not dispute that authority. Dkt. 28 at 26–27. But when the official "was acting as the final decisionmaker," the decision is the municipality's. *See Pembaur*, 475 U.S. at 480, 485. Gregory personally decided that the seizure would continue. SAC ¶¶ 46–48, 97. His official "fake news" statement the day before is the kind of public policy announcement *Groden* held sufficient to plead. SAC ¶ 20. The Motion's answers—that Gregory lacked knowledge until after the arrest and that "the release was already under way when he arrived"—come from Exhibits 4 through 6, not the SAC. Dkt. 28 at 26–27. Those recordings do not show what Gregory knew, or what other calls or information he had. *See* Part V.F. And if the Court considers them, they show the policymaker announcing the rule himself: "by state law, it is disorderly conduct language when you come in and start offending

somebody like that. Now, I can't get offended. . . . The city administrator can't get offended. But she's a water clerk. Whole different story." Ex. 5, 1:12–1:28; *see* Ex. 6, 0:50 (citation issued "because our water clerk was offended by his words"). On the recorded call, when told Plaintiff was in custody, Gregory asked, "For what?"; told "D.O.C.," his immediate question was "Who was offended?" Ex. 4, 17:43–17:47. That is a rule that offense is the crime, which the Constitution forbids, *see Cohen*, 403 U.S. at 21, stated by the official whose decisions on arrest, citation, and release the SAC pleads are the City's. *See Pembaur*, 475 U.S. at 480; *Praprotnik*, 485 U.S. at 124.

### B. Custom and failure to train.

53. In a few weeks, the same department and Chief used criminal process at least twice against critics: a felony arrest for a Facebook post asking about water-related illness, obtained on affidavits a district judge later found omitted material facts; and this arrest. SAC ¶¶ 17–19, 99–100. Each was publicly defended by the Chief. *Id.* ¶ 100.

54. The training theory pleads a specific deficiency: no training on the fighting-words limit that makes § 42.01(a)(1) constitutional. SAC ¶ 101. The need was obvious after speech-related arrests within weeks and no written policy on impartial policing. *Id.* ¶¶ 72, 102; *City of Canton v. Harris*, 489 U.S. 378, 390 & n.10 (1989); *Brown v. Bryan Cnty.*, 219 F.3d 450, 458–62 (5th Cir. 2000).

55. Plaintiff stands on the ratification and supervision theories as pleaded (SAC ¶¶ 98, 104) and does not press the hiring theory (¶ 103) at this stage. Count Four survives if any one theory is plausibly pleaded.

## IX. ANY DISMISSAL ON THE STANDING GROUND MUST BE WITHOUT PREJUDICE

56. Defendants seek dismissal of Plaintiff's requests for prospective relief under Rule 12(b)(1). Dkt. 28 at 28–29. Because the Department was dissolved on September 18, 2026 (SAC ¶¶ 6, 68, 71), Plaintiff does not oppose dismissal of Prayer ¶¶ A–B to the extent they seek prospective declaratory or injunctive relief. The concession does not affect his damages claims for a completed injury. *See Uzuegbunam v. Preczewski*, 592 U.S. 279, 291–92 (2021).

57. But Defendants' proposed order would dismiss "[e]ach and every claim . . . WITH PREJUDICE." Dkt. 28-8. A dismissal for lack of standing is jurisdictional and must be without prejudice. *Mitchell v. Bailey*, 982 F.3d 937, 944 (5th Cir. 2020); *see* Fed. R. Civ. P. 41(b).

## X. ANY 12(b)(6) DISMISSAL SHOULD BE WITHOUT PREJUDICE

58. No court has ruled on any of Plaintiff's pleadings. Dkt. 23; Dkt. 24. If any claim is deficient, Plaintiff asks that dismissal be without prejudice, with fourteen days to seek leave to amend under Rule 15(a)(2) and Local Rule CV-7(k).

59. An amendment, if needed, would add the complete recordings, the City's surveillance video, the clerk's May 15 statement, the dismissal recommendation, Gregory's pre-arrest calls and texts, and the officers' training records. *Cf. Goldstein v. MCI WorldCom*, 340 F.3d 238, 254–55 (5th Cir. 2003).

## XI. PRAYER

Plaintiff asks the Court to exclude Exhibits 1–7; deny the Motion as to Counts One, Two, Three (except as to Defendant Hocutt), and Four; dismiss Prayer ¶¶ A–B without prejudice to the extent they seek prospective relief; and, if the Court finds any other claim deficient, dismiss it without prejudice and with leave to seek amendment. In the alternative, if the Court considers any exhibit, Plaintiff asks the Court to treat the Motion under Rule 56 and grant relief under Rule 56(d).

Respectfully submitted,

**GRABLE PLLC**

*/s/ Brandon J. Grable*
Brandon J. Grable
Texas State Bar No. 24086983
brandon@grable.law
12451 Starcrest Drive, Suite 206
San Antonio, Texas 78216
Telephone: (210) 963-5297
Facsimile: (726) 215-4765

*Counsel for Plaintiff Winston Wesley Noles*

## CERTIFICATE OF SERVICE

I certify that on November 24, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of the filing to all counsel of record, including:

David Iglesias
Zachary T. Smith
Layne Faith Mustian
Iglesias, PLLC
501 Shelley Drive, Suite 125
Tyler, Texas 75701
*Counsel for Defendants*

*/s/ Brandon J. Grable*
Brandon J. Grable